IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02992-PAB-KMT

JUDICIAL WATCH, INC., et al.,
Plaintiffs,
v.

JENA GRISWOLD, Colorado Secretary of State in her official capacities, et al.,
Defendants.

## COLORADO'S MOTION TO DISMISS

Under the Court's Civil Practice Standards, Part F.2.a.i, Defendants, Colorado Secretary of State Jena Griswold (the "Secretary") and the State of Colorado (collectively, "Colorado"), move to dismiss Count I for lack of Article III standing, failure to allege that statutory notice was provided or excused, failure to plausibly allege that Colorado is not conducting a "reasonable" list maintenance program, and because the State is immune from suit under the Eleventh Amendment. Colorado conferred with Plaintiffs' counsel under D.C.Colo.LCivR 7.1 and Part F.2.a of the Court's Civil Practice Standards. Plaintiffs oppose the requested relief.

## BACKGROUND

### I.  The National Voter Registration Act of 1993

In 1993, Congress passed the National Voter Registration Act ("NVRA"), declaring that "it is the duty of the Federal, State, and local governments to promote the exercise" of the right to vote, and that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation." 52 U.S.C. § 20501(a). Known colloquially as the "motor voter law," most of the NVRA establishes programs to increase voter registration, including when a person applies for a driver's license. *See, e.g.*, *id.* § 20504.

The NVRA also limits the circumstances under which a voter may be removed from the rolls to four circumstances, including upon "a change in the residence of the registrant," *id.* § 20507(a)(4)(B). States may only remove a voter for this reason if the registrant "confirms in writing that the registrant has changed residence" to a new jurisdiction, or (I) fails to respond to a notice from the local election official, *and* (II) does not appear to vote in two straight general elections for federal office. *Id.* § 20507(d)(1).

For voters who have died or moved, the NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters." *Id.* § 20507(a)(4). A state may satisfy this requirement using the National Change of Address ("NCOA") database to "identify registrants whose addresses may have changed." *Id.* § 20507(c)(1). If the NCOA suggests a voter has moved to a new jurisdiction, local election officials must send the voter a notice postcard explaining how the voter can confirm the change in address. *Id.* § 20507(c)(1)(B), (d)(2). But unless the voter responds to the notice postcard, the NVRA prohibits states from removing that voter from the registration rolls for two general federal election cycles, even if the NCOA suggests the voter has moved. *Id.* § 20507(d)(1)(b).

Colorado has availed itself of this safe-harbor. Under Colorado law, the Secretary "shall" conduct a search of the NCOA database for all voters on Colorado's registration rolls. § 1-2-302.5(1), C.R.S.; 8 CCR 1505-1, Rule 2.13.1. The information obtained from that search is then transmitted to county clerks and recorders who send notices to those voters the NCOA suggests have moved. § 1-2-302.5(2)(a). If the data shows the voter has moved out of state, the clerk also

changes the voter's status from "active" to "inactive."[1] *Id.* § 302.5(2)(b)(3). If the voter fails to

return the notice—referred to in Colorado as a "confirmation card"—and "subsequently fails to

vote in two consecutive general elections, the county clerk and recorder shall cancel the [voter's]

registration record[.]" § 1-2-302.5(2)(b)(III)(B); 8 CCR 1505-1, Rule 2.13.2.

The NVRA authorizes "aggrieved" persons to sue for declaratory or injunctive relief. 52

U.S.C. § 20510(b). But Congress wanted to encourage compliance through cooperation, not

litigation. S. Rep. 103-6, at 21 (1993) ("Private civil enforcement should be designed to assure

and to encourage, to the fullest extent possible, the cooperation of local and state election

officials[.]"). Thus, an "essential element" of the scheme is a notice requirement. *Id.* To "provide

states in violation of the Act an opportunity to attempt compliance before facing litigation,"

*Assoc. of Cmty. Orgs. for Reform Now v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997), private

litigants must provide written notice of the alleged violation to the state's chief election official,

52 U.S.C. § 20510(b)(1). There are two exceptions to this default rule. If the violation occurs

within 120 days of a federal election, the litigant needs to wait only 20 days. *Id.* If the violation

occurs within 30 days of a federal election, no notice is required. *Id.* § 20510(b)(3).

## II.    Plaintiffs' Lawsuit

On October 5, 2020—29 days before the 2020 general federal election—Plaintiffs filed

this lawsuit. Compl. (Doc. No. 1). In it, they allege that Colorado violated the NVRA by failing

to conduct a general program that makes a "reasonable effort" to remove ineligible voters from

Colorado's registration rolls. *Id.* ¶ 73. Plaintiffs did not provide Colorado notice of this alleged

---

[1] In Colorado's all-mail-ballot elections, this distinction is critical. Only registered, *active* voters automatically receive a ballot through the mail. § 1-7.5-107(3)(a)(I), C.R.S.

violation before bringing suit. Instead, Plaintiffs claim that notice was excused. *Id.* ¶ 72. Colorado was served on October 22, nearly three weeks after the Complaint was filed and just over a week before the election. (Doc. No. 14), ¶ 1.

## LEGAL STANDARD

When a Plaintiff lacks Article III standing to pursue its claims, dismissal is appropriate under Rule 12(b)(1). *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 871 (10th Cir. 2020). An essential element of Article III standing, lacking here, is that the plaintiff has suffered an injury in fact. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

To survive a Motion to Dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). If a complaint relies on statistical analysis to meet this standard, dismissal is appropriate where the statistics suggest only that unlawful conduct is a "possible" explanation for the data. *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1053 (10th Cir. 2020). Alongside the statistics, Plaintiffs must allege "facts that would give rise to an inference" that the statistics are indicative of unlawful conduct, *id.*, particularly when an "'obvious alternative explanation' overwhelms any inference of liability that otherwise might exist," *Doe v. Univ. of Colo. ex rel. Bd. of Regents of Univ. of Colo.*, 255 F. Supp. 3d 1064, 1076 (D. Colo. 2017) (quoting *Iqbal*, 556 U.S. at 682).

## ARGUMENT

**I.    Plaintiffs Lack Standing to Challenge Colorado's Voter Registration Procedures.**

Plaintiffs have not demonstrated an injury in fact. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To state a cognizable injury in fact, the plaintiff must allege harm that is

"concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (quotations omitted). An injury is "particularized" if it affects the plaintiff "in a personal and individual way;" and it is concrete only if it "actually exist[s]," and is "not abstract." *Spokeo*, 136 S. Ct. at 1548. Merely alleging that the government has violated the law, without also demonstrating a particularized and concrete injury, does not confer standing. *Whitmore v. Arkansas*, 495 U.S. 149, 160 (1990).

These prerequisites to Article III standing are in addition to any separate *statutory* right to sue that Congress may bestow. *See Spokeo*, 136 S. Ct. at 1549. In *Spokeo*, for example, the plaintiff sued a people search engine under the Fair Credit Reporting Act, alleging it violated the statute's provisions requiring accurate credit reporting when it disseminated false information about him. *Id.* at 1546. The FCRA includes a private cause of action, *id.* at 1545, but the Court held that asserting a "bare procedural violation" of the statute is insufficient, because a "violation of one of the FCRA's procedural requirements may result in no harm." *Id.* at 1550.

Considering these well-established standing principles, the Complaint fails to allege an actionable injury in fact. The individual Plaintiffs do not allege that Colorado prevented *them* from voting. They do not allege, for example, that Colorado's purportedly bloated voter rolls caused delay or mishandling in the transmission or counting of their mail ballots. *See Krislov v. Rednour*, 946 F. Supp. 563, 566 (N.D. Ill. 1996) ("Standing under the NVRA is limited to . . . 'aggrieved persons' whose voting rights have been denied or impaired."). Instead, they allege only that they have a statutory right "to vote in elections . . . that comply with the procedures and protections required by the NVRA[.]" Compl. ¶ 66. This request for the government to follow the law is insufficient to confer standing. *See Whitmore*, 495 U.S. at 160.

More broadly, Plaintiffs' asserted harm is a generalized grievance shared equally by all voters—the opposite of a particularized and concrete injury. Nowhere do they assert negative consequences *to them* that are not equally shared by all members of the voting public. *See Lujan*, 504 U.S. at 573–74 (a plaintiff "seeking relief that no more directly and tangibly benefits him than it does the public at large does not state an Article III case or controversy" (punctuation omitted)). Even in the voting context, a widely dispersed injury that is shared equally by every voter does not confer standing. *See Martel v. Condos*, No. 5:20-cv-00131, __ F. Supp. 3d __, __, 2020 WL 5755289, at *4 (D. Vt. Sept. 16, 2020) ("If every voter suffers the same incremental dilution of the franchise caused by some third-party's fraudulent vote, then these voters have experienced a generalized injury."). This, too, is fatal to Plaintiffs' Article III standing.

The diversion of resources alleged by the organizational Plaintiff, Judicial Watch, Compl. ¶¶ 61–63, is likewise not an actionable injury in fact. Judicial Watch identifies no specific activities it has been forced to undertake to address Colorado's alleged NVRA violations. Merely asserting that it has "expended considerable resources" to "counteract [Colorado's] noncompliance," *id.* ¶¶ 61, 63, is far too vague to constitute a concrete and particularized injury. *See Colo. Taxpayers Union, Inc. v. Romer*, 963 F.2d 1394, 1397 (10th Cir. 1992) (organization's general allegations about a "drain on resources" was a "remote, uncertain injury" that did not confer standing). At most, Judicial Watch alleges a "minor setback to its organizational purpose"—harm that does not confer standing. *Romer*, 963 F.2d at 1397.

Moreover, even if Judicial Watch had identified specific costs or activities that it had undertaken, those expenditures by themselves would not confer standing. Judicial Watch must *also* identify specific, imminent harm that its expenditures are designed to avoid. *See Clapper v.*

6

*Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending"). The Complaint identifies no such harm. Plaintiffs' speculative fear of unspecified hypothetical future harm flowing from Colorado's alleged noncompliance with the NVRA is insufficient to confer standing. *See, e.g.*, *Campbell v. Trump*, No. 17-cv-02455-PAB-KHR, 2018 WL 4334003, at *2 (D. Colo. Sept. 11, 2018).

## II.     Plaintiffs Did Not Provide Statutory Notice of This Lawsuit to Colorado.

Plaintiffs also lack statutory standing. The NVRA's private right of action is carefully constrained so as not to embroil state election officials in meritless or avoidable litigation. Before initiating suit, aggrieved persons must first provide notice of the alleged violation to the State's chief election official. *See* 52 U.S.C. § 20510(b)(1), (2). This "provide[s] states in violation of the Act an opportunity to attempt compliance before facing litigation," *Miller*, 129 F.3d at 838, and allows States to identify for potential plaintiffs the flaws in their review of the State's NVRA compliance. *See, e.g.*, *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 716 (S.D. Miss. 2014) (observing that had plaintiffs provided notice, "the parties may well have worked out an expeditious solution that would have prevented this litigation").

In other words, the NVRA's private civil enforcement mechanism was intended to avoid, rather than encourage, litigation. S. Rep. 103-6, at 21 (1993) ("Private civil enforcement should be designed to assure and to encourage, to the fullest extent possible, the cooperation of local and State election officials[.]"). But to prevent the notice provision from insulating some violations affecting an imminent election from review, the NVRA does not require notice of *violations* that occur within 30 days of a federal election. 52 U.S.C. § 20510(b)(3). That exception does not

7

apply here, and Plaintiffs' failure to provide notice, Compl. ¶ 72, merits dismissal. *See, e.g.*, *Public Interest Legal Found. v. Boockvar*, 370 F. Supp. 3d 449, 457–58 (M.D. Pa. 2019).

### a. The NVRA's notice exceptions contemplate urgency imposed by an upcoming election.

There are only two exceptions to the NVRA's notice requirement: (1) if the alleged violation occurs within 120 days of an election, only 20 days' notice is required; and (2) if the alleged violation occurs within 30 days of an election, notice is excused altogether. 52 U.S.C. § 20510(b)(2), (b)(3). This tiered structure establishes a default rule subject to limited exceptions, which must therefore be construed narrowly. *See, e.g.*, *Comm'r of Internal Revenue v. Clark*, 489 U.S. 726, 739 (1989) ("In construing [statutes] in which a general statement of policy is qualified by an exception, we usually read the exception narrowly in order to preserve the primary operation of the provision."). The structure also confirms that the exception should only apply when the upcoming election imposes some urgency. Congress's preference was for disputes to be raised and resolved without burdensome litigation. *See* S. Rep. 103-6, at 21 (1993). But where an alleged violation threatened the integrity of an upcoming election, Congress enabled private plaintiffs to accelerate the statutory clock to facilitate timely review.

By providing for cascading review periods at 120 and 30 days before an election, Congress plainly did not intend for 52 U.S.C. § 20510(b)(3) to excuse notice as to generalized allegations of non-compliance. The facts here are instructive. Plaintiffs essentially knew of the grounds for this lawsuit in the summer of 2019, *see* Compl. ¶ 28, and a key dataset Plaintiffs use encompasses 2016–2018. *See id.* Part II.B. Plaintiffs even allege that they had "concerns" with Colorado's list maintenance practice in 2019. *Id.* ¶¶ 58–59. Yet they made no effort to seek emergency relief before the November 3, 2020 election. After filing exactly 29 days before the

election, Plaintiffs waited nearly three weeks to serve Colorado, and never sought to correct any alleged violations before the November 3, 2020 election—only to use that election to avoid providing notice of their generalized, non-specific allegations.

The 30-day exception must be narrowly construed so as not to enable this flagrant disregard for the NVRA's notice requirement. A contrary holding would ensure the exception "swallow[s] the rule." *Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 530 (2009). When plaintiffs advance a generalized grievance with no intent that the violation be remedied before the upcoming election, those plaintiffs must comply with the NVRA's default notice rule.

> **b.  Plaintiffs have not plausibly alleged the existence of a discrete violation occurring within 30 days of the November 2020 election.**

Even if the notice requirement could be excused on these facts, Plaintiffs have failed to plausibly allege the existence of a violation within 30 days of the November 2020 election. To avoid dismissal for failure to satisfy the NVRA's notice provision, a plaintiff must plausibly allege that it is "aggrieved" by a violation of the NVRA **and** that the violation "occurred within 30 days before the date of an election for Federal office." 52 U.S.C. § 20510(b)(1), (3). Here, Plaintiffs cite four pieces of "evidence" that allegedly suggest Colorado is not making a "reasonable" effort to remove ineligible voters. But each relies on data that is too outdated to suggest anything about Colorado's list maintenance in October 2020. Its first analysis, Compl. ¶¶ 26–35, relies on census data from 2014–2018, meaning it is at least two years old. As is the Election Assistance and Voting Survey ("EAVS") data used in Parts II.B, II.C, and II.D of the Complaint, which is from 2016–2018. *Id.* ¶¶ 36–57. Even the generalized registration allegations in Part II.D rely on a rolling two-year average that dates to 2018. *Id.* ¶ 52. None of these allegations plausibly suggest that Colorado was in violation of the NVRA on October 5, 2020.

To avoid the default notice rule, Plaintiffs must plausibly allege the existence of a present violation of the NVRA occurring within 30 days of a federal election. Plaintiffs' conclusory and outdated allegations cannot clear this bar, and the Complaint should be dismissed.

### c.  Plaintiffs' claims for which they have not provided notice are now moot.

Now that the November 2020 election has passed, the circumstances giving rise to Plaintiffs' alleged notice exception are now moot. "In a moot case, a plaintiff no longer suffers a redressable actual injury." *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019) (quotation omitted). Where, as here, a plaintiff seeks declaratory relief, the plaintiff "must be seeking more than a retrospective opinion that he was wrongly harmed by the defendant." *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011).

The 30-day exception was plainly intended to allow a voter who was wrongfully expunged from the registration rolls the ability to rectify that violation before an election. Once the election has passed, the urgency it imposes no longer exists. And because the NVRA authorizes only injunctive or declaratory relief, all a court can offer is "a retrospective opinion that [the voter] was wrongly harmed by the defendant." *Id*. Thus, the voter could now provide notice to the State and presumably be returned to the rolls for the next election.

Where, as here, a plaintiff sues within the NVRA's 30-day notice window and the alleged "violation" is not addressed before the election, the reason the plaintiff was able to avoid the notice provision is now moot. If that plaintiff wishes to assert that it is still being aggrieved by one or more violations of the NVRA, it may do so after providing notice of those violations.

**III.    By Ignoring Obvious Alternative Explanations, Plaintiffs Fail to Plausibly Allege that Colorado is Not Complying with the NVRA.**

The Complaint should also be dismissed under Rule 12(b)(6). The allegations are merely consistent with the obvious alternative explanation that Colorado is complying with its obligation not to remove nonresponsive, inactive voters for two full election cycles.

**a.    Plaintiffs do not address Colorado's adoption of the NVRA safe-harbor, let alone allege that Colorado is not following its procedures.**

Consistent with its purpose of encouraging cooperation from state and local election officials, the NVRA contains a "safe-harbor" provision for states seeking to satisfy the requirement of a "reasonable" program to remove ineligible voters from its lists. A State "may meet" the reasonableness requirement by implementing the NCOA process outlined at 52 U.S.C. § 20507(c). *See, e.g.*, *Bellitto v. Snipes*, 935 F.3d 1192, 1205 (11th Cir. 2019) ("As a safe harbor, the NCOA Process, at a minimum, constitutes a reasonable effort at identifying voters who have changed their addresses."). Colorado has availed itself of this safe-harbor, and its agencies are presumed to follow the law. *WildEarth Guardians v. Conner*, 920 F.3d 1245, 1261 (10th Cir. 2019) ("We generally presume that government agencies comply with the law[.]"). Yet Plaintiffs do not suggest that Colorado or its counties failed to act consistent with the safe-harbor process.

This is in sharp contrast to other NVRA cases that have proceeded past the motion-to-dismiss stage. For example, in *National Council of La Raza v. Cegavske*, 800 F.3d 1032, 1035 (9th Cir. 2015), the plaintiffs similarly alleged violations based on statistical analysis of Election Assistance Commission ("EAC") and Census data. But plaintiffs supplemented that analysis with "field investigations," in which the plaintiffs visited public assistance offices and spoke with local officials. *Id.* These investigations provided critical support for plaintiffs' allegations.

Elsewhere, Judicial Watch itself has buttressed its EAC and Census data using specific guidance or evidence that other jurisdictions are not conforming to the NVRA safe-harbor. *See, e.g.*, *Judicial Watch, Inc. v. Commonwealth of Pa.*, No. 1:20-cv-00708-CCC, Compl. ¶ 47 (W.D. Pa. April 29, 2020) (including quotes from county election manager that he "would concede that [the county is] behind in culling our rolls" and that list maintenance had "been put on the back burner"); *Judicial Watch, Inc. v. North Carolina*, No. 3:20-cv-00211-RJC-DCK, Compl. ¶¶ 56–58 (W.D.N.C. April 9, 2020) (alleging that published guidance from the state Election Board with regards to list maintenance was "contrary to North Carolina law"), *both attached as* Ex. A.

But Plaintiffs make no such allegations here, instead relying on outdated statistical analysis alone to allege that Colorado is not complying with state or federal law. Plaintiffs' burden is far greater than that, and their prior litigation demonstrates they know how to shoulder that burden when they have the facts to do so. But the Complaint here contains no allegations that address, let alone plausibly address, Colorado's compliance with NVRA's safe-harbor.

**b.   Plaintiffs' statistical analysis is, at most, "merely consistent with" liability.**

"Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quotations omitted). *See also Frappied*, 966 F.3d at 1053 (affirming dismissal under Rule 12(b)(6) where plaintiffs' statistics showed only that unlawful conduct was "possible" and plaintiffs had alleged "no other facts that would give rise to an inference" of liability); *U.S. ex rel. Integra Med Analytics L.L.C. v. Baylor Scott & White Health*, 816 F. App'x 892, 897 (5th Cir. 2020) (holding that "statistical data cannot meet" the *Twombly/Iqbal* pleading standard

where "it is also consistent with a legal and obvious alternative explanation"). Plaintiffs'
statistical analysis does not clear this bar.

First, in requiring states to make a "reasonable effort" to remove voters who have died or
moved, the NVRA affords states "substantial discretion" in crafting their list-maintenance
programs. *Common Cause v. Brehm*, 432 F. Supp. 3d 285, 313 (S.D.N.Y. 2020). Thus, Plaintiffs
allegations must meet the high bar of plausibly suggesting that Colorado's list maintenance
program is so intolerable as to be outside the wide latitude afforded Colorado under the NVRA.[2]

Second, Plaintiffs' purported statistical analysis is facially flawed, and falls far short of
meeting this burden. For example, one of Plaintiffs' forms of alleged "evidence" is the number
of voters Colorado counties reported removing from the voter lists based on the voter failing to
respond to an address confirmation notice and failing to vote in two straight elections. Compl. ¶¶
36–42 (Part II.B). This claim relies on Colorado counties' responses to Question A9 of the
EAVS, *id.* ¶ 38, which asks counties to list "the total number of voters removed from the voter
registration rolls" from 2016 to 2018, and then separately to report the voters removed for
specific reasons, 2018 EAVS, at 10.[3] But the Complaint focuses only on the percentage of voters
removed for one specific reason—failure to respond to a confirmation notice and vote in two
subsequent federal elections. It does not address the counties' overall removal rates, which

---

[2] *See also* Br. of *Amicus Curiae* Judicial Watch, Inc. in Support of Pet'rs, *Husted v. A. Philip
Randolph Inst.*, No. 16-980, at 8 (U.S. Mar. 10, 2017) (arguing that states have "wide latitude in
designing a 'general program that makes a reasonable effort' to remove ineligible registrants
from the rolls") (quotations omitted), https://tinyurl.com/y6b8szhw.

[3] Plaintiffs refer to this survey in their Complaint and provide a link to access the instrument.
Compl. ¶ 22. *See also Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013).

include removals for having moved outside the jurisdiction, death, criminal convictions, and others. *See* 2018 EAVS at 10 (including responses for removal because the voter "moved outside the jurisdiction" or because of "death"). In other words, Plaintiffs want to use the EAVS to make allegations about Colorado's efforts to remove voters who are ineligible because of a move or death, but then ignore EAVS data on Colorado's efforts to remove voters for exactly these reasons. The absence of this data undermines the plausibility of Plaintiffs' allegations.

Finally, the percentages provided in Parts II.B and II.C of the Complaint are actively misleading. First, the EAVS does not report percentages. It reports totals. *See* 2018 EAVS at 10 (requesting the "total number of voters" removed from the rolls from 2016–2018). To reach their percentages, Plaintiffs appear to be comparing the totals reported in response to questions A9e and A8a to the total number of registered voters (question A1). *See* 2018 EAVS at 3, 10. But question A1 asks counties to report the total number of registered voters *as of the 2018 general election*, *id.* at 2–3, while questions A9e and A8a ask for total figures relating to a two-year period from 2016 to 2018. By reporting the latter as a percentage of the former, the Complaint conflates two dramatically different time periods and fails to account for population growth.[4]

Plaintiffs' data is not indicative of a state failing to use "reasonable" efforts to remove ineligible voters. Instead, the "obvious alternative explanation" is that Colorado complies with the NVRA and keeps inactive, non-responsive voters on the rolls for two election cycles. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567–68 (2007) (observing an "obvious alternative

---

[4] Not only is Plaintiffs' ratio inapposite, it is also misleading. The number of voters registered on election day is artificially high. This is because registration grows as elections approach, but also because the NVRA prevents jurisdictions from removing most voters from the rolls within 90 days of an election. *See* 52 U.S.C. § 20507(c)(2)(A).

explanation" merited dismissal). As the Supreme Court has noted, this provision in the NVRA is itself "partly responsible for inflated lists of registered voters." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 192 (2008). Thus, the "obvious alternative explanation" that Colorado is emphatically *complying* with its NVRA obligations, leading to the statistics cited in the Complaint, "overwhelms any inference of liability that might otherwise exist." *Doe*, 255 F. Supp. 3d at 1076 (quotations omitted).

## IV.   Plaintiffs' claim against the State is barred by the Eleventh Amendment.

It is well established under the Eleventh Amendment that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst State Sch. Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (quotations omitted). "This jurisdictional bar applies regardless of the nature of the relief sought." *Id.* Plaintiffs' Complaint makes no allegation that the State of Colorado has consented to being sued in federal court for alleged NVRA violations. Nor does the Complaint allege that Congress abrogated the States' Eleventh Amendment immunity in the NVRA. *See Krieger v. Loudon Cty.*, No. 5:13cv073, 2014 WL 4923904, at *3 (W.D. Va. Sept. 30, 2014) (holding the NVRA does not contain the "requisite language" abrogating states' Eleventh Amendment sovereign immunity). Accordingly, Plaintiffs' claim against the State of Colorado is barred and must be dismissed.

Dated: December 7, 2020

PHILIP J. WEISER
Attorney General

/s Peter G. Baumann

*Grant T. Sullivan*, Assistant Solicitor General
*Peter G. Baumann,* Campaign Fin. Enforcement Fellow
1300 Broadway, Denver, CO 80203
Telephone: (720) 508-6349
Email: grant.sullivan@coag.gov; peter.baumann@coag.gov
*Attorneys for Defendants Griswold and State of Colorado*

15

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2020, I served a true and complete copy of the foregoing **MOTION TO DISMISS** upon all parties through ECF:


T. Russell Nobile
Eric Robert Holway
John Stuart Zakhem
*Attorneys for Plaintiffs*

Amanda R. Callais
Gillian Christine Kuhlmann
Lindsey Erin Dunn
Marc E. Elias
Matthew Prairie Gordon
Thomas J. Tobin
*Attorneys for Proposed Intervenors*

s/      Xan Serocki