IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02992-PAB-KMT

JUDICIAL WATCH, INC., et al.,
Plaintiffs,

v.

JENA GRISWOLD, Colorado Secretary of State in her official capacities, et al.,
Defendants.

## MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, FOR CERTIFICATION UNDER 28 U.S.C. § 1292(b)

Defendant Jena Griswold, in her capacity as Colorado Secretary of State, respectfully requests that the Court reconsider its holding that the individual plaintiffs have standing to maintain this action, or, alternatively, certify the issue of the individual plaintiffs' standing to the U.S. Court of Appeals for the Tenth Circuit for interlocutory appeal under 28 U.S.C. § 1292(b).

Reconsideration or certification is sensible in light of the Supreme Court's sustained circumscription of when intangible harms are sufficiently concrete to confer standing. Most recently in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), which came down after briefing on the motion to dismiss. Under *TransUnion* and its predecessors, Plaintiffs have failed to carry their burden of establishing an injury in fact sufficient to satisfy the standing inquiry.

### CERTIFICATE OF CONFERRAL.

Under D.C.Colo.LCivR 7.1A, defense counsel conferred with counsel for the Plaintiffs concerning this motion. Plaintiffs oppose the requested relief.

## BACKGROUND

### I. The August 16 Order.

This case arises under the National Voter Registration Act ("NVRA"). Specifically, it alleges that the office of the Secretary of State is failing to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" by reason of death or a change in residence. 52 U.S.C. § 20507(a)(4); ECF No. 1, ¶¶ 70-76. On August 16, 2021, the Court dismissed the State of Colorado from this action, but otherwise permitted Plaintiffs' claims to proceed. ECF No. 57.

In assessing Plaintiffs' standing to maintain this action, the Court first addressed the standing of the individual plaintiffs, Elizabeth Miller, Lorri Hovey, and Mark Sutfin; specifically, whether those plaintiffs had alleged an adequate injury in fact. *Id.* at 13-17. The Court rejected most of the individual plaintiffs' alleged injuries as generalized and hypothetical. *Id.* at 15-16. Ultimately, though, the Court concluded that the individual plaintiffs had alleged a sufficient injury based on their "concerns that noncompliance with the NVRA undermines [their] confidence in the integrity of the electoral process and discourages their participation." *Id.* at 16 (citing Pl.'s Mem. in Opp. to Mot. to Dismiss, ECF No. 35, at 8). This was the only injury the Court concluded was sufficient to establish the individual plaintiffs' standing.

Next, the Court addressed the standing of the organizational plaintiff, Judicial Watch. The Court focused on Judicial Watch's associational standing and did not address whether Judicial Watch had standing to proceed on its own behalf. ECF No. 57, at 19 n.10. The Court concluded that Judicial Watch had associational standing because (1) the individual plaintiffs had standing to sue in their own right, (2) the interests in the litigation are germane to Judicial

2

Watch's mission of ensuring "fidelity to the rule of law," and (3) relief in this action does not depend on the participation of individual plaintiffs. *Id.* at 18.

As a result, each Plaintiff's standing derives from the individual plaintiffs' alleged "concerns that noncompliance with the NVRA undermines the individual plaintiffs' confidence in the integrity of the electoral process and discourages their participation." *Id.* at 16.

## II.   *TransUnion LLC v. Ramirez.*

Briefing on Defendants' motion to dismiss concluded on January 25, 2021. On June 25, 2021, the Supreme Court handed down its ruling in *TransUnion*.

The challenge in *TransUnion* arose under the Fair Credit Reporting Act. Like the NVRA, the FCRA includes a cause of action entitling consumers to sue for certain violations. *Compare* 52 U.S.C. § 20510(a) (permitting persons "aggrieved by a violation" of the NVRA to seek declaratory or injunctive relief "with respect to the violation"), *with* 15 U.S.C. § 1681n(a) (establishing a private right of action under the FCRA).

As it had in *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), the *TransUnion* Court "rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." 141 S. Ct. at 2205 (quotations omitted). "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." *Id.*

But *TransUnion* expanded *Spokeo* in critical ways. First, *TransUnion* emphasized—even opening its opinion with this point—that a plaintiff seeking standing based on a statutory cause of action only satisfies the injury-in-fact requirement if their injury "has a close relationship to a

3

harm traditionally recognized as providing a basis for a lawsuit in American courts." 141 S. Ct. at 2204 (quotations omitted). "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.*

Second, for the first time in the Supreme Court's standing jurisprudence, it recognized not only the Article III concerns at play when Congress grants a statutory cause of action, but also the significant Article II concerns that accompany such causes of action. *Id.* at 2207. Although the courts "accept the displacement of the democratically elected branches when *necessary* to decide an actual case . . . otherwise the choice of how to prioritize and how aggressively to pursue legal actions against defendants who violate the law falls within the discretion of the Executive Branch." *Id.* (quotations and citations omitted) (emphasis added).

Scholars have begun to note the significant new ground treaded *TransUnion*, specifically as to statutorily-created private rights of action. *See, e.g.*, Daniel J. Solove et al., *Standing & Privacy Harms: A Critique of* TransUnion v. Ramirez, 101 Boston L. Rev. Online 62 (2022), *available at* https://ssrn.com/abstract=3895191 ("[T]he shift in *TransUnion* could have dramatic implications. . . . If *Spokeo* and *TransUnion* are carried to their logical conclusion, common and longstanding private rights of action for countless laws . . . might no longer be viable in federal court."). Particularly as to plaintiffs alleging "intangible" injuries, such as the injury recognized here. *See, e.g.*, Peter Ormerod, *Making Privacy Injuries Concrete*, 79 Wash. & Lee L. Rev. ___, 1, 5 (2022) (forthcoming), *available at* https://ssrn.com/abstract=3886632 (noting that *TransUnion* "further limited Congress's ability to create legal rights enforceable in federal court," continuing its "repeated[] holdings "that the doctrine of Article III standing deprives federal courts of jurisdiction over some lawsuits involving intangible injuries").

4

Moreover, in the just-over-two-months since *TransUnion* was issued, dozens of courts, including the Tenth Circuit, have already applied its historical analogue test to assess whether plaintiffs' alleged injuries were sufficiently similar to historically recognized injuries to confer standing. *See, e.g.*, *Lupia v. Medicredit, Inc.*, -- F.4th --, 2021 WL 3627103, at *4 (10th Cir. Aug. 17, 2021); *Ward v. Nat. Patient Account Servs. Sols., Inc.*, -- F.4th --, 2021 WL 3616067, at *3-4 (6th Cir. Aug. 16, 2021); *Mastel v. Miniclip SA*, -- F. Supp. 3d. --, 2021 WL 2983198, at *5-6 (E.D. Cal. July 15, 2021). In one such case, the Sixth Circuit held that the plaintiff lacked standing because the harm he suffered from an alleged violation of the Fair Debt Collection Practices Act—which includes a statutory cause of action—did not "bear a close relationship to traditional harms." *Ward*, 2021 WL 3616067, at *3-4.

## ARGUMENT

**I. The Court should reconsider the August 16 Order in light of *TransUnion*.**

   **a. Legal Standard.**

The power to reconsider non-final orders falls within the court's "plenary power to revisit and amend interlocutory orders as justice requires." *Vigil v. Colo. Dept. of Corrections*, No. 09-cv-01676, 2011 WL 1518660-PAB-KLM, at *1 (D. Colo. April 20, 2011) (quotations omitted). Such motions are especially proper when "new evidence or legal authority has emerged." *Rivera v. Exeter Fin. Corp.*, No. 15-cv-01057-PAB-MEH, 2019 WL 6173666, at *1 (D. Colo. Nov. 19, 2019); *see also Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) ("Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law[.]"); *United Fire & Casualty Co v. Boulder Plaza Residential, LLC*, No. 06-cv-00037-PAB-CBS,

5

2010 WL 420046, at *10 (D. Colo. Feb. 1, 2010) (reconsidering interlocutory order of summary judgment "in light of subsequent developments in Colorado law").

### b. *TransUnion* represents an intervening change of controlling law warranting reconsideration.

*TransUnion* holds that a plaintiff suing under a statutory cause of action bears the burden of identifying "a close historical or common-law analogue for their asserted injury." *Lupia*, 2021 WL 3627103, at *4 (quoting *TransUnion, LLC*, 141 S. Ct. at 2204). It also requires courts to be cautious about expanding the standing of such private litigants given Article II concerns.

The Court did not have the benefit of briefing on the application of *TransUnion*, and perhaps as a result, the August 16 Order does not address these two points. To the contrary, because Plaintiffs' complaint focuses on the bases for Judicial Watch's *organizational* standing, so did the parties' briefing.[1] *See* ECF No. 1, at 11-12. Now, though, the Court has concluded that all of Plaintiffs' standing rests on intangible concerns of the *individual* plaintiffs. ECF No. 57 at 16-17. The Court will benefit from robust briefing regarding whether an individual's concerns about alleged noncompliance with the NVRA is sufficiently concrete to establish standing.

The Court will also benefit from briefing regarding whether the individual plaintiffs' concerns have a historical analogue. In *TransUnion*, the Court affirmed that some intangible injuries, such as reputational harms, disclosure of private information, and intrusion upon seclusion, are sufficiently concrete to satisfy the injury-in-fact requirement. 141 S. Ct. at 2204.

---

[1] The complaint's focus on organizational standing also explains why Defendants did not submit the *TransUnion* decision as supplemental authority in support of their motion to dismiss during the interim between the completion of briefing and the Court's ruling. That is, Defendants did not anticipate that the Court would focus on individual standing as opposed to the organizational standing that was the main focus of Plaintiffs' pleading.

To qualify, though, an intangible harm must bear a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.*

Whether mere "concerns" that a defendant's conduct (or lack of conduct) will "undermine . . . confidence in the integrity of the electoral process and discourage[] participation" bear a "close relationship" to a historically-recognized harm is now central to this suit. Given the centrality of this question to Plaintiffs' standing, the Court should exercise its discretion to reconsider the August 16 Order in light of *TransUnion*.

### c. Plaintiffs have not satisfied their burden of identifying a historical or common-law analogue for their asserted injury.

Once the Court exercises its authority to reconsider the August 16 Order, it should dismiss the complaint for lack of standing because Plaintiffs' asserted injury is not sufficiently "concrete" to satisfy the injury-in-fact requirement. As always, Plaintiffs bear the burden of demonstrating their own standing. *TransUnion LLC*, 141 S. Ct. at 2207-08 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Neither Plaintiffs' complaint, nor any of their pleadings, identify any historical analogue for the individual plaintiffs' generalized, subjective, and hypothetical concerns about alleged noncompliance with the NVRA undermining their confidence in the electoral process. Plaintiffs note that the Supreme Court has recognized a state's interest in maintaining public confidence in the electoral process. Pl.'s Mem. in Opp. to Mot. to Dismiss, ECF No. 35, at 8 (citing *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006); *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 196 (2008)). But congressional recognition of that *state* interest is insufficient to confer concrete harm on *individuals* who lack confidence in state election procedures. *See generally TransUnion*, 141 S. Ct. at 2204-05 (discussing role of statutory causes of action in injury-in-fact inquiry).

7

At bottom, Plaintiffs cite no authority, and the office of the Secretary of State is aware of none, suggesting that an individual's mere "concern" about their state's voting procedures amounts to a harm traditionally recognized as providing a basis for a lawsuit in American courts. Because Plaintiffs have not borne the burden of establishing a historical or common-law analogue for their asserted harm, they lack standing and their claims must be dismissed.

### d. The asserted injury lacks a limiting principle.

Under *TransUnion*, Congress cannot "authorize virtually any citizen to bring a statutory damages suit against virtually any defendant who violated virtually any federal law." 141 S. Ct. at 2190. The August 16 Order, however, runs the risk of establishing exactly that precedent.

By definition, a "concern" is a subjective attitude towards a specific set of facts. Because concerns stem from wariness about future, hypothetical events, the Supreme Court has cautioned against elevating concerns into the types of concrete harms sufficient to establish standing. *See, e.g.*, *Clapper v. Amnesty Intern. USA*, 568 U.S. 411-14 (2013).

If "concerns" about the effects of noncompliance with a law confer standing, statutory causes of action become broad authorizations for "virtually any citizen" to bring suit. *TransUnion LLC*, 141 S. Ct. at 2190. The FCRA context in which *TransUnion* arose is instructive. Under this Court's holding, all a FCRA plaintiff needs to do to demonstrate a concrete injury-in-fact is express a concern that a reporting agency's noncompliance with FCRA undermines their confidence in the agency. This would represent a massive expansion of standing as compared to the Supreme Court's careful circumscription in *Spokeo* and *TransUnion*.

Moreover, in the context of the NVRA, this Court's holding establishes that any plaintiff, at any time, can avail itself of the federal court system based on subjective concerns about

electoral integrity. This would be especially troubling in light of recent events, in which individuals and organizations have engaged in a coordinated, bad-faith effort to undermine electoral confidence.[2] Article III standing exists to ensure that such generalized, speculative, and hypothetical concerns do not form the basis for onerous and expensive federal litigation.

    e. **Judicial Watch's organizational standing does not provide an alternative basis for jurisdiction.**

If the Court on reconsideration concludes that the individual plaintiffs lack standing and proceeds to evaluate Judicial Watch's organizational standing as an alternative basis for jurisdiction, it should conclude that Judicial Watch lacks standing for the reasons argued in Defendants' motion to dismiss and reply. *See* ECF Nos. 34 & 44. As fully explained in that briefing, Judicial Watch's self-imposed decision to "monitor" compliance with the NVRA does not perceptibly impair its functions or activities. Similar to the plaintiff's mere "interest in a problem" in *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972), Judicial Watch here simply seeks to "fix[] a problem that otherwise would not affect [it] at all." ECF No. 44, at 3 (quotations and citations omitted).

**II.**    **In the alternative, the Court should certify the question of Plaintiffs' standing under 28 U.S.C. § 1292(b).**

*TransUnion* is already having a substantial affect on cases, like this one, in which plaintiffs sue under a statutory cause of action alleging intangible harms. *See, e.g.*, *Lupia*, 2021

---

[2] This point is particularly salient here, where the organizational plaintiff, Judicial Watch, is among the chief architects of the strategy to undermine confidence in the electoral system. Its President, Tom Fitton, has called the 2020 election an "ELECTORAL COUP," stating that "The evidence shows @RealDonaldTrump lawfully won." Tom Fitton, (@TomFitton), Twitter, (Jan. 6, 2021, 7:17 AM), https://tinyurl.com/yz3dj8yu. The August 16 Order essentially allows Judicial Watch to manufacture its own standing by cultivating concern amongst its members and then using those concerns to establish an injury-in-fact.

WL 3627103, at *4. Given *TransUnion*'s implications for standing jurisprudence, and the significant efficiencies that will result from early resolution of the jurisdictional question, the Court should certify its August 16 Order to the court of appeals under 28 U.S.C. § 1292(b) in the event it does not vacate the Order on reconsideration. Certification will allow the court of appeals to resolve the question of whether "concerns that noncompliance with the NVRA undermines plaintiffs' confidence in the integrity of the electoral process and discourages their participation," ECF No. 57, at 16, constitute a sufficiently concrete harm to satisfy Article III's injury-in-fact requirement. Similarly, if the Court concludes that Judicial Watch's organizational standing provides an alternative basis for jurisdiction, it should certify the question for interlocutory appeal. There is substantial ground for differences in opinion regarding whether an advocacy organization's voluntary decision to "monitor" the government, thereby allegedly draining its resources, constitutes an actionable injury in fact under Article III.

    a.  Legal Standard

Appeals of non-final orders are governed by 28 U.S.C. § 1292(b). Section 1292(b) permits an interlocutory appeal where the Court is "of the opinion that [its] order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Challenges to a court's subject-matter jurisdiction or justiciability are particularly ripe for certification under this statute. 16 Charles Alan Wright, et al., Fed. Prac. & Proc. Juris § 3931, nn.23-24 (3d ed 2017); *Michelson v. Enrich Intern., Inc.*, 6 Fed. Appx. 712, 715 (10th Cir. 2001) (addressing interlocutory order pursuant to 28 U.S.C. § 1292(b) as to plaintiff's standing); *Kenney v. Helix TCS, Inc.*, No. 17-cv-01755-CMA-KMT,

2018 WL 510276, at *2 (D. Colo. Jan. 23, 2018) (certifying question going to court's subject matter jurisdiction).

### b. Plaintiffs' standing represents a controlling question of law.

The first predicate to interlocutory appeal is that the order must involve a "controlling question of law." 28 U.S.C. § 1292(b). Whether the suit should be dismissed due to lack of standing is such a question. *See, e.g.*, *Forest Guardians v. Bureau of Land Mgmt.*, 188 F.R.D. 389, 396 (D.N.M. 1999) ("Standing is a controlling question of law, so it meets the first requirement of § 1292(b)). If the Tenth Circuit concludes that the injuries Plaintiffs have alleged—either the individual plaintiffs' "concerns" or Judicial Watch's voluntary decision to "monitor" the government—are insufficient to establish standing, their claims will be dismissed. Thus, this discrete question of Article III standing is controlling in this case.

### c. There is substantial ground for difference of opinion as to whether Plaintiffs' alleged injuries are sufficient to establish standing.

Although *TransUnion* represents a further shift in the Supreme Court's standing jurisprudence, it merely continues the Court's trend of limiting the types of intangible harms sufficient to confer standing on individual plaintiffs. *See, e.g.*, *Spokeo, Inc.*, 578 U.S. 330. Representative of this trend, *TransUnion* not only required plaintiffs to identify a historical analogue for their asserted injury, but also raised Article II concerns associated with the creation of private causes of action for violations of federal statutes.

But even before *TransUnion*, the Supreme Court had carefully scrutinized allegations of intangible harm. Whether a plaintiff's mere "concerns" can *never* support Article III standing under the Supreme Court's cases, or whether those authorities merely require a more nuanced analysis, is the subject of ongoing debate, demonstrated above. At minimum, there is substantial

ground for differences of opinion, satisfying § 1292(b)'s requirement. Courts within the Tenth Circuit will benefit from the court of appeals having the opportunity to assess *TransUnion*'s effect on private plaintiffs using intangible "concerns" to sue under a statutory cause of action. Moreover, certification will allow the court of appeals to establish a framework that can guide the analysis of historical analogies for a wide range of asserted intangible injuries.

The current moment adds important context. Voters nationwide are being bombarded with messages of fraud and election abuse. Some of those voters emerge from these echo chambers concerned about election integrity. Whether those concerns establish standing to sue state election officials under the NVRA—disrupting those officials' duties and forcing taxpayers to incur substantial costs in defense—represents a critical question. Resolving it sooner, rather than later, will confer significant benefits on the courts of this district and this circuit, who might otherwise be inundated with requests for relief during future election cycles.

If the Court determines in the alternative that Judicial Watch possesses organizational standing, there are equally substantial grounds for differing opinions that would also support certification under 28 U.S.C. § 1292(b). As the prior briefing explains, the strong weight of authority supports dismissing Judicial Watch's claims because an advocacy organization's mere interest in a problem does not confer standing and a self-imposed decision to incur a drain on resources does not cure the defect. ECF No. 44, at 1-4. Were it otherwise, any organization with an "interest in a problem" could acquire standing, circumventing *Sierra Club*, 405 U.S. at 739.

**d. Resolving Plaintiffs' standing now will materially advance this litigation.**

NVRA litigation is particularly expensive and fact-intensive. As the August 16 Order contemplates, resolving this matter will require "extensive" expert testimony. ECF No. 57, at 25

(citing *Bellitto v. Snipes*, 935 F.3d 1192, 1197 (11th Cir. 2019)). Moreover, Colorado's NVRA regime is a collective effort between the office of the Secretary of State and Colorado's County Clerks and Recorders. *See, e.g.*, 8 CCR 1505-1 Rule 2.13 (outlining list maintenance obligations of the Secretary and County Clerks respectively). Discovery may therefore encompass not only the office of the Secretary of State, but also the county officials charged with conducting elections. *See generally* Defs.' Unopposed Mot. to Stay Discovery & Disclosures, ECF No. 24, at 5-9. This runs the risk of disrupting Colorado's election efforts.

Judicial efficiency and economy will also be preserved by resolving the threshold jurisdictional question of Plaintiffs' standing now, before the parties embark on time-consuming and extensive discovery. *See, e.g.*, *Burchett v. Bardahl Oil Co.*, 470 F.2d 793, 796 (10th Cir. 1972) (stating district court's order on jurisdiction was "properly presented" to the Tenth Circuit under § 1292(b) because "an interlocutory appeal might avoid protracted and expensive litigation"). If the Tenth Circuit concludes that the individual plaintiffs' concerns regarding NVRA compliance are insufficient to confer standing, it would be a waste of limited state and judicial resources—not to mention those of the individual litigants—to commence the onerous and expensive discovery process before the appellate court has the opportunity to address this threshold issue. *See, e.g.*, *Bastien v. Office of Senator Ben Nighthorse Campbell*, No. 01-cv-00799-CAB (OES), 2006 WL 8451994, at *3 (D. Colo. Jan. 18, 2006) (certifying "novel" question under § 1292(b), stating "[I]f the Court of Appeals were to hold that this cause of action abated when Senator Nighthorse Campbell left the Senate, the litigation would end without the substantial -- and ultimately fruitless -- expense of further discovery and trial.").

Discovery is currently stayed. *See* ECF No. 27 (granting unopposed motion to stay discovery). That stay represents the parties' combined recognition that threshold issues in this litigation, including the question of Plaintiffs' standing, are worth resolving before embarking on burdensome discovery. In light of the shifting terrain underpinning intangible harms as the basis for standing, resolving Plaintiffs' injury in fact will materially advance the litigation.

### e. In the event the Court certifies the question to the Tenth Circuit, it should stay further proceedings in the district court.

If the Court agrees that the question of Plaintiffs' standing warrants interlocutory review, it should stay proceedings in this Court pending the court of appeals' ruling. Under § 1292(b), the certification of a question for interlocutory appeal does not automatically stay the proceedings in the district court "unless the district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C. § 1292(b). Here, where the benefits of certification rely upon the parties not expending time and resources litigating the merits of the action pending the Tenth Circuit's determination of Plaintiffs' standing, a stay is warranted. *See, e.g.*, *Hymes v. Bank of America, N.A.*, Nos. 18-cv-2352 & 18-cv-4157, 2020 WL 9174972, at *7 (E.D.N.Y. Sept. 29, 2020) ("Since Defendant's appeal [under § 1292(b)] has the potential to resolve this case without the need for further discovery, the Court finds that it is in the public interest and the interests of all parties to stay discovery and all further proceedings"). Accordingly, should the Court agree to certify its August 16 Order, the office of the Secretary of State respectfully requests that it also stay the district court proceedings pending the Tenth Circuit's ruling.

## CONCLUSION

For the foregoing reasons, the office of the Secretary of State respectfully requests that the Court reconsider its August 16 Order to the extent it holds that the individual plaintiffs have

suffered concrete harm sufficient to establish an injury in fact. If the Court denies reconsideration or grants reconsideration but affirms the August 16 Order, the office of the Secretary of State respectfully requests in the alternative that the Court certify the order for interlocutory appeal under 28 U.S.C. § 1292(b) and stay further proceedings.

| | |
|---|---|
| Dated: August 30, 2021 | PHILIP J. WEISER<br>Attorney General<br><br>/s Peter G. Baumann<br>*Grant T. Sullivan*, Assistant Solicitor General<br>*Peter G. Baumann*, Assistant Attorney General<br>1300 Broadway, Denver, CO 80203<br>Telephone: (720) 508-6349<br>Email: grant.sullivan@coag.gov; peter.baumann@coag.gov<br>*Attorneys for Defendant Griswold* |