IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-02992-PAB-KMT

JUDICIAL WATCH, INC.,
ELIZABETH MILLER,
LORRI HOVEY, and
MARK SUTFIN

    Plaintiffs,

v.

JENA GRISWOLD, Colorado Secretary of State, in her official capacities,

    Defendant.

_____

# ORDER
_____

This matter is before the Court on the Recommendation of United States Magistrate Judge Kathleen M. Tafoya [Docket No. 48]. The magistrate judge recommends that the Court deny the Motion to Intervene as Defendants [Docket No. 17] filed by Voto Latino and Vote.org ("proposed intervenors"). Docket No. 48 at 11. Proposed intervenors filed an objection to the recommendation, Docket No. 49, to which plaintiffs responded. Docket No. 53.

## I. BACKGROUND[1]

Plaintiffs filed this lawsuit against Jena Griswold, the Colorado Secretary of State (the "Secretary"), and the State of Colorado (collectively, "Colorado"), alleging that Colorado has not complied with the voter list maintenance requirements of Section 8 of

---

[1] Additional background facts and procedural history are set forth in the Court's order denying defendants' motion to dismiss, Docket No. 57, and in the magistrate judge's recommendation on the motion to intervene. Docket No. 48.

the National Voter Registration Act ("NVRA"), which requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" by reason of death or a change in residence. 52 U.S.C. § 20507(a)(4); *see also* Docket No. 1 at 1, ¶ 1; *see id.* at 14, ¶¶ 70–76.

Colorado filed a motion to dismiss, arguing that plaintiffs "[A] lack of Article III standing, [B] fail[] to allege that statutory notice was provided or excused, [C] fail[] to plausibly allege that Colorado is not conducting a 'reasonable' list maintenance program, and [D] [] the State is immune from suit under the Eleventh Amendment." Docket No. 34 at 1. The Court dismissed all claims against the State of Colorado, Docket No. 57 at 27, but found that plaintiffs have plausibly alleged that Colorado's voter list maintenance program does not comply with the NVRA. *Id.*

Voto Latino is "a 501(c)(4) grassroots non-profit organization focused on educating and empowering a new generation of Latinx voters" by assisting individuals "with registering to vote." Docket No. 17 at 4. Vote.org is "the largest 501(c)(3) nonprofit, nonpartisan voting registration and get-out-the-vote technology (GOTV) platform in America" and "helps individuals across the country, including in Colorado, register to vote" by working "extensively to support low-propensity voters, which may include racial and ethnic minorities and younger voters who historically have low voter turn-out rates." *Id.* at 6.

Proposed intervenors filed a joint motion to intervene as defendants, Docket No. 17, which the Court referred to Magistrate Judge Kathleen M. Tafoya for recommendation. Docket No. 18. The magistrate judge recommends that the Court

deny the motion. Docket No. 48 at 11. Proposed intervenors object to the recommendation, Docket No. 49, and plaintiffs have responded to the objection. Docket No. 53.

## II. LEGAL STANDARD

When a magistrate judge issues a recommendation on a dispositive matter, the Court must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). An objection is "proper" if it is both timely and specific. *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996). A specific objection "enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *Id.* In the absence of a proper objection, the Court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings"). When a magistrate judge issues an order on nondispositive matters, "[a] party may serve and file objections to the order within 14 days after being served with a copy." Fed. R. Civ. P. 72(a). "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*

Proposed intervenors seek *de novo* review, *see* Docket No. 56 at 1; however, motions to intervene are generally considered to be non-dispositive. *See, e.g., Turner*

*v. Efinancial, LLC*, No. 18-cv-292-CMA-GPG, 2018 WL 4219388, at *2 (D. Colo. Sept. 5, 2018) (determining motion to intervene as non-dispositive because it does not alter any party's claim or defense) (citing *Rhodes v. Ohse*, 1998 WL 809510, *1 (N.D.N.Y. 1998) (noting that 28 U.S.C. § 636(b)(1)(A) does not list motions to intervene as dispositive; therefore, a motion to intervene is non-dispositive); *United States v. W.R. Grace & Co.-Conn.*, 185 F.R.D. 184 (D.N.J. 1999) (noting that, in the Third Circuit, a magistrate judge may hear and determine a motion to intervene, as a non-dispositive, pretrial motion, even without consent of parties); *United States v. Brooks*, 163 F.R.D. 601 (D. Or. 1995) (treating a motion to intervene as a non-dispositive pretrial ruling, reviewable under clearly erroneous or contrary to law standard)); *PDC Energy, Inc. v. DCP Midstream, LP*, No. 14-cv-01033-RM-MJW, 2014 WL 12676230, at *1 (D. Colo. Sept. 3, 2014). Although the magistrate judge recommended, rather than ordered, that the motion be denied, the Court will review the recommendation for clear error. This standard "requires that the reviewing court affirm unless it 'on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 365, 395 (1948)). When applying the "clearly erroneous" standard, the Court is not entitled to reverse the magistrate judge's findings "simply because it is convinced that it would have decided the case differently," and the Court may not decide factual issues *de novo*. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123 (1969)).

## III. ANALYSIS

Proposed intervenors raise four objections to the recommendation.  *See* Docket No. 49 at 7-8.[2]  First, they object that the magistrate judge misapplied the Tenth Circuit's liberal standard for intervention as a matter of right.  *Id.* at 7.  Second, they argue that the magistrate judge erred in finding that their interests are not sufficiently related to the case.  *Id.* at 8.  Third, they contend that their interests are not adequately represented by the parties and that the magistrate judge erred in finding otherwise.  *Id.*  Fourth, they argue that, even if they are not entitled to intervene as a matter of right, they should at least be allowed to do so under the permissive intervention rule.  *Id.*

### A.  Intervention as of Right

Federal Rule of Civil Procedure 24 governs the intervention of non-parties. Under Rule 24(a)(2), non-parties may intervene in a pending lawsuit as of right if: "(1) the application is timely; (2) the applicants claim an interest relating to the property or transaction which is the subject of the action; (3) the applicants' interest may as a practical matter be impaired or impeded; and (4) the applicants' interest is not adequately represented by existing parties."  *W. Energy Alliance v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017) (brackets omitted).  "Failure to satisfy even one of these requirements is sufficient to warrant denial of a motion to intervene as of right." *Maynard v. Colo. Sup. Ct. Office of Att'y Regulation Counsel*, No. 09-cv-02052-WYD-MT, 2010 WL 2775569, at *3 (D. Colo. July 14, 2010) (quoting *Commodity Futures Trading Comm'n v. Heritage Capital Advisory Servs., Ltd.*, 736 F.2d 384, 386 (7th Cir.

---

[2] Plaintiffs concede that proposed intervenors' motion was timely.  Docket No. 36 at 3 n.1.  The Court therefore does not consider this factor.

1984)).

### *1. Impairment of Protectable Interest*

Under Rule 24(a)(2), a party seeking to intervene as of right must "claim[] an interest relating to the property or transaction that is the subject of the action." Although "the contours of the interest requirement have not been clearly defined," *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1251 (10th Cir. 2001), courts in this circuit have typically considered whether the proposed intervenor's interest is "direct, substantial, and legally protectable." *Coalition of Ariz./N.M. Cntys. for Stable Economic Growth v. Dep't of Interior*, 100 F.3d 837, 840, 842 (10th Cir. 1996). This inquiry is highly fact-specific. *See W. Energy Alliance*, 877 F.3d at 1165. "A protectable interest is one that would be impeded by the disposition of the action." *Id.* (internal quotation marks and citation omitted). While "[t]he threshold for finding the requisite legally protected interest is not high," *Am. Ass'n of People with Disabilities v. Herrera*, 257 F.R.D. 236, 246 (D.N.M. 2008), "an intervenor must specify a particularized interest" in the litigation and may not "raise interests or issues that fall outside of the issues raised" by the parties. *Id.* (citing *Chiles v. Thornburgh*, 865 F.2d 1197, 1212 (11th Cir. 1989); *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525 (5th Cir. 1994)).

Rule 24(a)(2) also requires proposed intervenors "to demonstrate that the disposition of [the] action may as a practical matter impair or impede their ability to protect their interest." *Utah Ass'n of Cntys.*, 255 F.3d at 1253. This element "is not separate from the question of existence of an interest." *Id.* (quoting *Natural Res. Def.*

6

*Council v. U.S. Nuclear Regul. Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978)).  Thus, although the burden to establish this element is "minimal" and only requires a showing "that impairment of [a] substantial legal interest is possible," *id.*, intervenors who cannot demonstrate that they have a protectable interest in the litigation will not be able to satisfy the impairment of interest requirement.  *See Am. Ass'n of People with Disabilities*, 257 F.R.D. at 254 (finding that, because proposed intervenor failed to demonstrate protectable interest, she also failed to establish that disposition of the action would impair or impede her ability to protect her interest).

In their motion, proposed intervenors express concern that, if plaintiffs are successful in this lawsuit and Colorado's maintenance efforts are strengthened or made more aggressive, eligible voters will be removed from the voter rolls, which will "mak[e] it more difficult for registered voters to maintain their registration and participate in the democratic process."  Docket No. 17 at 10.  Their argument is based on reports of "voter purges" removing eligible voters from largely under-represented communities from the voter rolls.  *Id.* at 10–11.  The magistrate judge found that, while proposed intervenors "have an interest in ensuring that eligible Colorado voters, some of whom [proposed intervenors] have helped register to vote, do, in fact, remain registered to vote," there is "simply no relationship" between the proposed intervenors' interest – ensuring eligible voters remain on the rolls – and "the claims at issue in this case, which concern removing ineligible voters from voter calls."  Docket No. 48 at 8.  Moreover, the magistrate judge noted, the proposed intervenors did not offer factual support for how the removal of eligible voters would occur.  *Id.* at 7–8.

In their objection, proposed intervenors argue that plaintiffs' complaint "makes clear that [plaintiffs] seek to remove more voters from Colorado voter rolls, which is all but certain to lead to the removal of lawful, eligible voters, including the very voters [proposed intervenors] have registered." Docket No. 49 at 10. Proposed intervenors cite to a number of the same news reports mentioned in their motion that they claim show how likely it is that eligible voters will be impacted by plaintiffs' efforts. *See id.* at 5–7. Given this history, proposed intervenors insist that the magistrate judge has based her recommendation on the "flawed assumption" that a stricter maintenance program will only remove ineligible voters. *Id.* at 10.

Proposed intervenors' fears – that the removal of eligible voters is likely if plaintiffs succeed because a stricter program that removes more ineligible voters could overcorrect and sweep up eligible voters – is based on a speculative risk that the Court's remedy will have an unreasonably high error rate. Such a speculative fear is not a "direct, substantial, and legally protectable" interest, *see Utah Ass'n of Cntys.*, 255 F.3d at 1251, because it is based on an assumption that the new or modified maintenance program would not comply with the law. The Court therefore finds the cases that proposed intervenors rely upon to be distinguishable. For instance, in *Pub. Interest Legal Found. v. Winfrey*, 463 F. Supp. 3d 795, 802 (E.D. Mich. 2020), the court quoted *Bellitto*, 935 F.3d at 1198, which explained that "a maximum effort at purging voter lists could minimize the number of ineligible voters, but those same efforts might also remove eligible voters. Conversely, preventing the states from removing registrants altogether would ensure that no eligible voters are removed, but, at the

same time, maximize the risks associated with inaccurate voter rolls." While such reasoning may be compelling in the abstract, the hypothetical is not persuasive here because proposed intervenors have not shown that deciding this case according to the law could result in the inadvertent removal of eligible voters. The Court also does not find persuasive proposed intervenors' examples of voter purges as there is no indication in those sources that the inadvertent removal of eligible voters was due to a court remedy. To the contrary, proposed intervenors' citation to an article regarding Texas's proof of citizenship requirement, *see* Docket No. 49 at 6, indicates that the practice was stopped pursuant to a settlement agreement filed with the court.

Proposed intervenors have only shown that aggressive list maintenance programs can result in removal of eligible voters generally. They have failed to show such problems occurring when a program is implemented pursuant to a court remedy or, crucially, how their fears would materialize in this particular case. They have, therefore, not shown an interest that would be impeded by disposition of this case. *See Coalition of Ariz./N.M. Cntys. for Stable Economic Growth*, 100 F.3d at 840–41. Moreover, were intervention as of right permitted where proposed intervenors showed only a risk that the court's remedy might not be perfect, there would be little limitation on who could intervene in a dispute. *See id.* (noting that the court must balance efficiency with due process). The Court therefore finds no clear error in the magistrate judge's determination that, notwithstanding the Tenth Circuit's liberal approach to intervention, *see Kane Cnty. v. United States*, 928 F.3d 877, 890, 896–97 (10th Cir. 2019), proposed intervenors have not met their burden of showing a direct, substantial, and legally

protectable interest in this litigation. *See also Ocelot Oil Corp.*, 847 F.2d at 1464; *Anderson*, 470 U.S. at 573 (the Court is not entitled to reverse the magistrate judge's findings "simply because it is convinced that it would have decided the case differently").[3]

### B. Permissive Intervention

A non-party may also seek permissive intervention under Federal Rule of Civil Procedure 24(b). Permissive intervention is allowed if (1) the motion to intervene is timely[4] and (2) the non-party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "The decision to grant or deny a motion for permissive intervention is wholly discretionary with the district court." *Maynard*, 2010 WL 2775569, at *4 (quoting *South Dakota ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787 (8th Cir. 2003)).

In exercising its discretion to grant or deny permissive intervention, a "court must consider whether the intervention will unduly delay or prejudice adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Additionally, a "finding that existing parties adequately protect prospective intervenors' interests will support a denial of permissive intervention." *Am. Ass'n of People with Disabilities*, 257 F.R.D. at 249; see

---

[3] Because proposed intervenors have not shown clear error in the magistrate judge's determination that they do not possess a sufficient interest to intervene as of right, the Court does not reach the other requirements. *See Maynard*, 2010 WL 2775569, at *3 ("Failure to satisfy even one of these requirements is sufficient to warrant denial of a motion to intervene as of right.").

[4] As mentioned previously, plaintiffs have conceded that proposed intervenors' motion was timely. *See* Docket No. 36 at 3 n.1. The Court, therefore, does not consider this issue.

also *Tri-State*, 787 F.3d at 1075 (noting that court had elsewhere "affirmed denial of permissive intervention" on grounds that prospective intervenor's interests were adequately represented by existing parties).

In their motion to intervene, proposed intervenors argue that their interests share common questions of law and fact and that intervention would neither delay nor prejudice adjudication. Docket No. 17 at 13–14. More specifically, proposed intervenors state that plaintiffs seek Colorado's "compliance with the list maintenance program set out in Section 8 of the NVRA," while proposed intervenors seek "to ensure that the goals of the NVRA are met and that no eligible voters are improperly removed from Colorado's voter rolls." *Id.* at 14. Thus, while plaintiffs and proposed intervenors have "starkly differing perspectives," "the questions of law and fact that underlie these positions are the same." *Id.*

The magistrate judge disagreed and found that proposed intervenors "do not raise sufficiently common issues of law and fact with this lawsuit so as to support permissive intervention." Docket No. 48 at 10. She noted that, while proposed intervenors are concerned that "no eligible voters are improperly removed from Colorado's voter calls," *id.* (quoting Docket No. 17 at 14), this lawsuit is "aimed at enforcing the NVRA so as to remove certain ineligible voters from the voter rolls." *Id.* The magistrate judge also noted that, "[p]resumably . . . [proposed intervenors] simply side with [Colorado], in that they contend that Colorado state officials are fully enforcing, and complying with, the NVRA as written." *Id.* She concluded that permitting intervention "'would only clutter the action unnecessarily,' without adding any

11

corresponding benefit to the litigation." *Id.* (quoting *Arney v. Finney*, 967 F.2d 418, 421–22 (10th Cir. 1992)).

Proposed intervenors object that the magistrate judge's conclusion was in error because "disagreement with all existing parties, especially the party whose side a proposed intervenor seeks to join, is not a requirement for permissive intervention." Docket No. 49 at 14. The Court, however, finds no clear error in this determination because the magistrate judge did not hold that proposed intervention is proper only if the proposed intervenor disagrees with all existing parties. Rather, by indicating that proposed intervenors will side with defendant, the magistrate judge was noting that defendant will adequately protect proposed intervenors' interests, which is a consideration in the permissive intervention analysis. *See Am. Ass'n of People with Disabilities*, 257 F.R.D. at 249 ("finding that existing parties adequately protect prospective intervenors' interests will support a denial of permissive intervention"); *see also Tri-State*, 787 F.3d at 1075 (noting that court had elsewhere "affirmed denial of permissive intervention" on ground that prospective intervenor's interests were adequately represented by existing parties). Therefore, while it may be true that proposed intervenors' interests are not necessarily the same as defendant's, *see Utah Ass'n of Cntys.*, 255 F.3d at 1255–56 ("[T]he government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public merely because both entities occupy the same posture in the litigation."), the Court is not left with the "definite and firm conviction" that the magistrate judge committed a mistake. *See Ocelot Oil Corp.*, 847 F.2d at 1464;

*Anderson*, 470 U.S. at 573 (the Court is not entitled to reverse the magistrate judge's findings "simply because it is convinced that it would have decided the case differently").

Second, the Court finds no clear error in the magistrate judge's conclusion that intervention would clutter the action. *See* Docket No. 48 at 10. Plaintiffs do not contend that intervention is untimely, and, when proposed intervenors filed their motion, just six weeks after plaintiffs filed their complaint, there had been no dispositive motion filed or scheduling order entered. However, the matter has advanced somewhat and the Court has denied a motion to dismiss. Thus, intervention at this stage could cause delay. However, given that it was plaintiffs that sought, and received, a four-week extension to respond to the intervention request, Docket Nos. 30, 33, and that discovery has been stayed pending resolution of the motion to dismiss, *see* Docket No. 27, the Court does not afford much weight to this consideration.

Third, the magistrate judge determined that intervention would not add any corresponding benefit to the litigation. Docket No. 48 at 10–11. The Court disagrees. As other courts have concluded, "the experience and expertise of [the proposed intervenors] will assist the court, rather than waste additional time." *See Kobach*, 2013 WL 6511874, at *4; *Winfrey*, 463 F. Supp. 3d at 801 ("a fulsome consideration of both competing interests, vigorously advocated by appropriately interested parties concerned with each side of the balancing test, unquestionably will be helpful to the Court when it is called upon to strike the required balance and decide whether the defendants' program of list maintenance is 'reasonable' within the meaning of the statute"). The Court will therefore accept the magistrate judge's recommendation as to permissive

13

intervention, overrule proposed intervenors' objection, and permit proposed intervenors to participate as *amicus curiae* given the unique information and perspectives that they possess. See *Hydro Res., Inc. v. Env't Protection Agency*, 608 F.3d 1131, 1143 n.7 (10th Cir. 2010); see also *Vigil v. Am. Tel. & Tel. Co.*, No. C-1476, 1969 WL 118, at *1 (D. Colo. Sept. 9, 1969); *United States v. State of Mich.*, 940 F.2d 143, 165 (6th Cir. 1991).

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Recommendation of United States Magistrate Judge Kathleen M. Tafoya [Docket No. 48] is **ACCEPTED**. It is further

**ORDERED** that Proposed Intervenors' Objections to the Magistrate Judge's Recommendation on Motion to Intervene as Defendants [Docket No. 49] are **OVERRULED**. It is further

**ORDERED** that Motion to Intervene as Defendants [Docket No. 17] is **DENIED**. It is further

**ORDERED** that proposed intervenors may move to appear as *amicus curiae* on or before October 1, 2021.

DATED September 20, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge