IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-02992-PAB-KMT

JUDICIAL WATCH, INC.,
ELIZABETH MILLER,
LORRI HOVEY, and
MARK SUTFIN,

     Plaintiffs,

v.

JENA GRISWOLD, Colorado Secretary of State, in her official capacities,

     Defendant.

---

## ORDER

---

This matter is before the Court on the Motion for Reconsideration or, in the Alternative, for Certification under 28 U.S.C. § 1292(b) [Docket No. 62] filed by defendant (the "Secretary"). Plaintiffs responded, Docket No. 71, and the Secretary replied. Docket No. 74.

## I. BACKGROUND

The Court assumes the parties' familiarity with the background facts and procedural history in this case, which have been set forth in previous orders and recommendations, *see* Docket Nos. 48, 57, 72, and will not be repeated here except to the extent necessary to resolve the Secretary's motion.

Plaintiffs filed this lawsuit against the Secretary and the State of Colorado, alleging noncompliance with the voter list maintenance provisions of the National Voter Registration Act ("NVRA"), which requires states to "conduct a general program that makes a

reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" due to death or a change in residence. 52 U.S.C. § 20507(a)(4); *see also* Docket No. 1 at 1, ¶ 1; *see id.* at 14, ¶¶ 70–76.

The Secretary and the former defendant the State of Colorado filed a motion to dismiss, arguing that plaintiffs "[A] lack of Article III standing, [B] fail[] to allege that statutory notice was provided or excused, [C] fail[] to plausibly allege that Colorado is not conducting a 'reasonable' list maintenance program, and [D] [] the State is immune from suit under the Eleventh Amendment." Docket No. 34 at 1. The Court dismissed all claims against the State of Colorado, Docket No. 57 at 27, but found that plaintiffs plausibly alleged a claim against the Secretary that Colorado's voter list maintenance program does not comply with the NVRA. *Id.* In finding that plaintiffs plausibly alleged a NVRA violation, the Court considered the standing of both the individual plaintiffs, namely, Elizabeth Miller, Lorri Hovey, and Mark Sutfin, as well as Judicial Watch. *See id.* at 11–19.

The Secretary now seeks reconsideration of the Court's determination that the individual plaintiffs have standing to proceed in this lawsuit. Docket No. 62 at 1. Alternatively, the Secretary asks the court to certify the issue of the individual plaintiffs' standing for interlocutory appeal to the Tenth Circuit pursuant to 28 U.S.C. § 1292(b). *Id.* The Court also considers Voto Latino and Vote.org's *amicus curiae* brief, submitted in support of the Secretary's motion for reconsideration. Docket No. 76.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *See Hatfield v. Bd. of Cnty. Comm'rs for Converse Cnty.*, 52 F.3d 858, 861 (10th Cir. 1995). Instead, motions for reconsideration fall within a court's plenary

power to revisit and amend interlocutory orders as justice requires. *See Paramount Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088, 1090 (10th Cir. 1980) (citing Fed. R. Civ. P. 54(b)); see also *Houston Fearless Corp. v. Teter*, 313 F.2d 91, 92 (10th Cir. 1962). In order to avoid the inefficiency which would attend the repeated re-adjudication of interlocutory orders, judges in this district have imposed limits on their broad discretion to revisit interlocutory orders. *See, e.g.*, *Montano v. Chao*, No. 07-cv-00735-EWN-KMT, 2008 WL 4427087, at *5-6 (D. Colo. Sept. 28, 2008) (applying Rule 60(b) analysis to the reconsideration of interlocutory order); *United Fire & Cas. Co. v. McCrerey & Roberts Constr. Co.*, No. 06-cv-00037-WYD-CBS, 2007 WL 1306484, at *1–2 (D. Colo. May 3, 2007) (applying Rule 59(e) standard to the reconsideration of the duty-to-defend order). Regardless of the analysis applied, the basic assessment tends to be the same: courts consider whether new evidence or legal authority has emerged or whether the prior ruling was clearly in error. *Cf. Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1203 (10th Cir. 2018) ("[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law."). Motions to reconsider are generally an inappropriate vehicle to advance "new arguments, or supporting facts which were available at the time of the original motion." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

**III. ANALYSIS**

The individual plaintiffs alleged two principal injuries that they claimed were sufficient to confer Article III standing. *See* Docket No. 57 at 11–19. First, they claimed that purportedly bloated voter rolls could lead to fraudulent votes, which could diminish or dilute the individual plaintiffs' votes, and that they feared such a result. *Id.* at 15. The Court

found that this concern is both a generalized grievance and hypothetical. *Id.* The injury is generalized because it is shared equally by all voters, as the potential diminution in the value of each vote is not specific to the individual plaintiffs. *Id.* And the grievance is hypothetical because, the Court found, vote dilution is not an immediate consequence of the Secretary's alleged violation of the NVRA because it is not necessarily true that a fraudulent vote would be cast. *Id.* at 16.

The Court, however, found the individual plaintiffs' second alleged injury to be sufficient for Article III standing. The individual plaintiffs alleged that the Secretary's alleged noncompliance with the NVRA undermines the individual plaintiffs' confidence in the integrity of the electoral process and discourages their participation. Docket No. 35 at 8. Accepting the allegations in the complaint as true, the Court found that this alleged injury is not "common to all members of the public," Docket No. 57 at 16 (quoting *Lance v. Coffman*, 549 U.S. 437, 440–41 (2007)), nor speculative or hypothetical. *Id.* at 16–17. The individual plaintiffs alleged that their confidence was already undermined, and the Court noted the "independent significance" of public confidence in the electoral process. *Id.* at 17 (quoting *Crawford v. Marion Cnty.*, 553 U.S. 181, 197 (2008)). The Court found that Judicial Watch has associational standing through the standing of its members, the individual plaintiffs, but the Court declined to consider whether Judicial Watch also has organizational standing to proceed in its own right. *Id.* at 17–19, *id.* at 19 n.10.

As the Court has noted, a "motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Alpenglow Botanicals*, 894 F.3d at 1203. Motions to reconsider are not appropriate to present new arguments or facts that were available at the time of the original motion. *Servants of the*

4

*Paraclete*, 204 F.3d at 1012.  The Secretary does not argue that the Court misapprehended the facts or either party's position or that the Court's order was clearly in error.  Rather, the Secretary argues that "[r]econsideration or certification is sensible in light of the Supreme Court's sustained circumscription of when intangible harms are sufficiently concrete to confer standing," which the Secretary argues was "[m]ost recently" expressed in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), which was issued after briefing on the motion to dismiss.  Docket No. 62 at 1.

    The Secretary believes that *TransUnion* changed the standing analysis in "critical ways."  *Id.* at 3.  First, the Secretary argues that the Supreme Court "emphasized . . . that a plaintiff seeking standing based on a statutory cause of action only satisfies the injury-in-fact requirement if their injury 'has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts.'"  *Id.* at 3–4 (quoting *TransUnion*, 141 S. Ct. at 2204).  The Secretary argues that the individual plaintiffs failed to allege a historical or common-law analogue for their alleged injury and therefore have not established standing.  *Id.* at 7–8.

    Second, the Secretary argues that *TransUnion* marked the first time that the Court has "recognized not only the Article III concerns at play when Congress grants a statutory cause of action, but also the significant Article II concerns that accompany such causes of action."  *Id.* at 6 (quoting *TransUnion*, 141 S. Ct. at 2207).  This concern, the Secretary argues, "requires courts to be cautious about expanding the standing of such private litigants given Article II concerns."  *Id.* at 6.

    Neither argument is persuasive.  As to the first argument, *TransUnion* does not represent an intervening change in the law on Article III standing.  The Secretary argues

that *TransUnion* has changed the standing analysis because courts must now determine whether a plaintiff who alleges an intangible injury has identified a "close relationship to a harm traditionally recognized" that is "close historical or common-law analogue." *Id.* at 3–4 (quoting *TransUnion*, 141 S. Ct. at 2204). The Secretary emphasizes that *TransUnion* opens with this point, implying that it is novel. *Id.* at 3. The Secretary, however, ignores that the Court relied on *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340–41 (2016), for the "close relationship" language both in the opening paragraph and throughout the opinion in *TransUnion*. *See, e.g.*, *TransUnion*, 141 S. Ct. at 2200; *id.* at 2204; *id.* at 2208–09; *id.* at 2213. For instance, the Court explained,

> with respect to the concrete-harm requirement in particular, this Court's opinion in *Spokeo v. Robins* indicated that courts should assess whether the alleged injury to the plaintiff has a "close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit in American courts. 578 U.S. at 341. That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury.

*Id.* at 2204. The instruction from *Spokeo* that courts should assess whether the alleged injury bears a close relationship to a traditional harm has existed since at least 2016.[1] Moreover, courts in the Tenth Circuit recognized this requirement before it was reiterated in *TransUnion*. *See, e.g.*, *Rodriguez v. Cascade Collections LLC*, 2021 WL 1222147, at *3 (D. Utah Mar. 31, 2021); *Robinson v. Capital One Bank (USA), N.A.*, 2020 WL 5819664, at

---

[1] *Spokeo* itself relied on *Vt. Agency of Nat. Resources v. U.S. ex rel. Stevens*, which stated "Article III's restriction of the judicial power to 'Cases' and 'Controversies' is properly understood to mean 'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.'" 529 U.S. 765, 774, 774 (2000) (quoting *Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 102 (1998); *Coleman v. Miller*, 307 U.S. 433, 460 (1939) (opinion of Frankfurter, J.) ("the Constitution established that "[j]udicial power could come into play only in matters that were the traditional concern of the courts at Westminster and only if they arose in ways that to the expert feel of lawyers constituted 'Cases' or 'Controversies'")).

*3 (D. Kan. Sept. 30, 2020); *Lupia v. Medicredit, Inc.*, 445 F. Supp. 3d 1271, 1279 (D. Colo. 2020) (noting that "because the Article III case-or-controversy requirement 'is grounded in historical practice,' the court should consider 'whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts'" (quoting *Spokeo*, 578 U.S. at 341)); *Hargis v. Equinox Collection Servs., Inc.*, 2019 WL 2341662, at *2 (N.D. Okla. June 3, 2019); *LaVigne v. First Community Bancshares, Inc.*, 215 F. Supp. 3d 1138, 1144 (D.N.M. 2016). The Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Eleventh, and D.C. Circuits also discussed the historical or common-law analogue before *TransUnion*. *See, e.g.*, *DiNaples v. MRS BPO, LLC*, 934 F.3d 275, 279 (3d Cir. 2019); *Trapp v. SunTrust Bank*, 699 Fed. App'x. 144, 145 (4th Cir. 2017) (unpublished); *Cranor v. 5 Star Nutrition, LLC*, 998 F.3d 686, 691 (5th Cir. 2021); *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 861 (6th Cir. 2020); *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458, 462 (7th Cir. 2020); *Golan v. FreeEats.com, Inc.*, 930 F. 3d 950, 958-59 (8th Cir. 2019); *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1270 (9th Cir. 2019); *Salcedo v. Hanna*, 936 F.3d 1162, 1170 (11th Cir. 2019); *Owner-Operator Indep. Drivers Assn, Inc. v. Dep't of Transp.*, 879 F.3d 339, 344–45 (D.C. Cir. 2018). While *TransUnion* may have expanded or "clarified" the "close relationship" standing inquiry, the Supreme Court's – and other courts' – reliance on *Spokeo* shows that *TransUnion* did not amount to a change in controlling law.[2]

---

[2] The Court also agrees with plaintiffs that the Secretary could have cited *Spokeo*'s close-relationship language in the motion to dismiss, but because she did not, she may not raise this issue for the first time on a motion for reconsideration. *Servants of the Paraclete*, 204 F.3d at 1012 (Motions to reconsider are generally an inappropriate vehicle to advance "new arguments, or supporting facts which were available at the time of the original motion."). Voto Latino and Vote.org do not mention *Spokeo* or the close-relationship-to-a-

7

Nor is the language in *TransUnion* as strong as the Secretary implies, as the Supreme Court explains that, "[i]n looking to whether a plaintiff's asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts, we do not require an exact duplicate." 141 S. Ct. at 2209. The Court thus finds that reconsideration is not warranted here.

The Secretary's second argument for reconsideration is that *TransUnion* was the "first time in the Supreme Court's standing jurisprudence" that the Court recognized the "significant Article II concerns" that arise when Congress grants a statutory cause of action. Docket No. 62 at 4. The Secretary cites a portion of *TransUnion* stating that courts sometimes "accept the displacement of the democratically elected branches when necessary to decide an actual case," but "otherwise the choice of how to prioritize and how aggressively to pursue legal actions against defendants who violate the law falls within the discretion of the Executive Branch." *Id.* (quoting *TransUnion*, 141 S. Ct. at 2207). The Secretary provides little elaboration on this point and does not explain what she would have the Court do, even assuming that this statement were a change in controlling law. It is not clear, for instance, whether the Secretary believes that, in light of *TransUnion*, if the plaintiffs prevail in this lawsuit, the Court would be "displac[ing]" the Executive Branch or whether plaintiffs must establish why the Court should displace the Executive Branch. Some clarity appears in *TransUnion* itself. The portion of *TransUnion* that the Secretary quotes is preceded by the following language: "A regime where Congress could freely authorize *unharmed* plaintiffs to sue defendants who violate federal law not only would

---

traditional harm language in their *amicus* brief. *See* Docket No. 76.

violate Article III but also would infringe on the Executive Branch's Article II authority," 141 S. Ct. at 2207, because enforcing federal law is the Executive Branch's responsibility. But this does not amount to a change in controlling law, as *Spokeo* itself explained that a plaintiff alleging a bare procedural violation with no injury does not have standing. *See Spokeo*, 578 U.S. at 341–42 (explaining that a plaintiff cannot allege "a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III"). The fact that conferring standing on such a plaintiff may also raise Article III concerns does not change the controlling law on Article III standing. Reconsideration, therefore, is not warranted on this ground either.

The Secretary has provided the Court with recent Tenth Circuit authority, *O'Rourke v. Dominion Voting Sys., Inc.*, No. 21-1161, 2022 WL 1699425 (10th Cir. May 27, 2022), that she argues is persuasive. Docket No. 82. There, the Tenth Circuit affirmed the district court's dismissal of the complaint for lack of Article III standing, noting that, by the plaintiffs' own admission, they claimed injuries "no different than the supposed injuries experienced by all registered voters." *Id.* at *1 (quoting *O'Rourke v. Dominion Voting Sys. Inc.*, No. 20-cv-03747-NRN, 2021 WL 1662742, at *13 (D. Colo. Apr. 28, 2021)). The plaintiffs' claimed injuries in *O'Rourke*, however, were far more generalized than the individual plaintiffs' injuries in this case. In *O'Rourke*, the Tenth Circuit noted that the plaintiffs sought damages and a permanent injunction on behalf of every registered voter in the country and alleged that the defendants' conduct "hurt[] *every registered voter* in the country, no matter whose side the voter is on, . . . damaged the [p]laintiffs, but more broadly, *every registered voter in America*, all of whom have an interest in free and fair elections to determine the President of the United States of America, [and] violated the rights of [p]laintiffs and *all*

9

*registered voters in the United States.*" *Id*. (emphasis added). The individual plaintiffs' alleged injures in this case, however, are not "common to all members of the public." Docket No. 57 at 16 (quoting *Lance*, 549 U.S. at 440–41). As the Court has noted, they claim that the Secretary's alleged noncompliance with the NVRA undermines their personal confidence in the integrity of the electoral process and discourages their personal participation. *Id.* (citing Docket No. 35 at 8). *O'Rourke*, therefore, is distinguishable.

Alternatively, the Secretary asks the Court to certify the standing issue for interlocutory appeal under 28 U.S.C. § 1292(b). Docket No. 62 at 9–14. Title 28 U.S.C. § 1292(b) provides four criteria that must be satisfied before an issue may be certified for interlocutory appeal: (1) the action must be a civil action; (2) the court must conclude that the order involves a controlling question of law; (3) there must be substantial ground for difference of opinion as to the resolution of that question; and (4) it must appear that an immediate appeal from the order may materially advance the ultimate termination of the litigation. *See also Wells Fargo Bank, N.A. v. Mesh Suture Inc.*, No. 19-cv-03218-PAB-GPG, 2020 WL 5833839, at *1 (D. Colo. Mar. 3, 2020); *Smith v. Argent Mortg. Co., LLC*, No. 05-cv-02364-REB-BNB, 2007 WL 3232078, at *2 (D. Colo. Oct. 30, 2007). In general, only exceptional circumstances justify departing from the basic policy of postponing appellate review until after final judgment. *Ebonie S. ex rel. Mary S. v. Pueblo Sch. Dist. 60*, No. 09-cv-00858-WJM-MEH, 2011 WL 1882829, at *2 (D. Colo. May 17, 2011) (quoting *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996)); *see also Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981) ("Unless a litigant can show . . . that the order can be 'effectually challenged' only by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal."). "A district court has discretion in determining

whether to certify an order for interlocutory appeal." *Ebonie S. ex rel. Mary S.*, 2011 WL 1882829, at *2.

"[C]ourts of appeals have remained ever mindful that interlocutory appeals are traditionally disfavored." *Gelder v. Coxcom Inc.*, 696 F.3d 966, 969 (10th Cir. 2012) (quoting *Vallario v. Vandehey*, 554 F.3d 1259, 1262 (10th Cir. 2009)); *see also Kennett v. Bayada Home Health Care, Inc.*, 14-cv-02005-CMA-MJW, 2016 WL 374231, at *2 (D. Colo. Feb. 1, 2016) (noting that the Tenth Circuit has recognized that certification under 28 U.S.C. § 1292(b) "should be limited to extraordinary cases" (quoting *Utah ex rel. Utah State Dep't of Health v. Kennecott Corp.*, 14 F.3d 1489, 1495 (10th Cir. 1994)).

The parties dispute whether the plaintiffs' standing issue is a controlling question of law and whether resolving the standing issue on interlocutory appeal will materially advance the ultimate termination of the litigation. The Secretary argues that both factors weigh in favor of certifying the issue. On the first factor, the Secretary argues that, "[i]f the Tenth Circuit concludes that the injuries [p]laintiffs have alleged – either the individual plaintiffs' 'concerns' or Judicial Watch's voluntary decision to 'monitor' the government – are insufficient to establish standing, their claims will be dismissed." Docket No. 62 at 11. Similarly, the Secretary argues that resolving the standing issue sooner can avoid discovery and preserve judicial efficiency. *Id.* at 13.

Plaintiffs argue that the standing issue is not a controlling question of law because there is a secondary basis for Judicial Watch's standing, namely, organizational standing, which the Court declined to reach. Docket No. 71 at 12–13. Plaintiffs contend that, even if the Secretary is successful in an interlocutory appeal, the case would not be dismissed because the Tenth Circuit would remand the case back to this Court to consider Judicial

Watch's organizational standing as an alternative. *Id.* at 13. Therefore, on plaintiffs' view, because a decision from the Tenth Circuit "would only dispose of one claim, not the entire suit," the "proposed appeal does not concern a controlling issue of law." *Id.* (quoting *Heaton v. Soc. Fin., Inc.*, 2016 WL 232433, at *6 (N.D. Cal. Jan. 20, 2016)). As a result, plaintiffs argue, resolving standing on interlocutory appeal will not materially advance the ultimate termination of the litigation.

The Court finds that, whether considered under the second factor, i.e., controlling question of law, or fourth factor, i.e., advancing the ultimate termination of the litigation, interlocutory appeal is inappropriate. Even if the Tenth Circuit agrees with the Secretary that the individual plaintiffs have not alleged a sufficiently concrete injury for Article III standing, the case would not be dismissed. Instead, the Tenth Circuit would remand the case to this Court to consider Judicial Watch's organizational standing. Accordingly, because the Court does not find that interlocutory reversal would terminate the action or at greatly conserve the resources of this Court or the litigants, the Court finds interlocutory review inappropriate. *See In re Adam Aircraft Indus., Inc.*, 09-cv-00729-CMA, 2010 WL 717841, at *3 (D. Colo. Feb. 23, 2010). The Court also notes that the Secretary not shown that "the order can be 'effectually challenged' *only* by immediate appeal," *see Carson*, 450 U.S. at 84 (emphasis added), because the order may be challenged in the normal course of appellate review.

Although having the Tenth Circuit address standing earlier rather than later could obviate the need for discovery, that factor is present in nearly every case and cannot be sufficient to overcome the Tenth Circuit's admonition that interlocutory appeals are disfavored and should be limited to extraordinary cases. *See Gelder*, 698 F.3d at 969;

*Kennecott Corp.*, 14 F.3d at 1495. Moreover, the Court finds that it would be inappropriate to certify issues for interlocutory appeal that the Court has not itself considered, as the Secretary requests. *See* Docket No. 62 at 10 ("if the Court concludes that Judicial Watch's organizational standing provides an alternative basis for jurisdiction, it should certify the question for interlocutory appeal"). "Section 1292(b) is not 'intended merely to provide review of difficult rulings in hard cases.'" *Jordan v. Maxim Healthcare Servs., Inc.*, 15-cv-01372-KMT, 2017 WL 4407939, at *4 (D. Colo. May 9, 2017) (quoting *Ash Grove Cement Co. v. Liberty Mut. Ins. Co.*, 2011 WL 96679, at *1 (D. Or. Jan. 10, 2011)). The Court will thus deny the Secretary's request under 28 U.S.C. § 1292(b).

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's Motion for Reconsideration or, in the Alternative, for Certification under 28 U.S.C. § 1292(b) [Docket No. 62] is **DENIED**.

DATED August 25, 2022.

                BY THE COURT:

                _____
                PHILIP A. BRIMMER
                Chief United States District Judge