## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No. 20-cv-02992-PAB-KMT**

JUDICIAL WATCH, INC.,
ELIZABETH MILLER,
LORRI HOVEY,
MARK SUTFIN,
AMERICAN CONSTITUTION PARTY OF COLORADO,
LIBERTARIAN PARTY OF COLORADO,

   Plaintiffs,

v.

JENA GRISWOLD, Colorado Secretary of State, in her official capacities,

   Defendant.

---

## FIRST AMENDED COMPLAINT

---

Plaintiffs Judicial Watch, Inc., Elizabeth Miller, Lorri Hovey, Mark Sutfin, the American Constitution Party of Colorado, and the Libertarian Party of Colorado file this complaint for declaratory and injunctive relief against Jena Griswold, in her official capacity as Colorado Secretary of State and chief State election official.

1. Plaintiffs seek declaratory and injunctive relief to compel Defendants to comply with their voter list maintenance obligations under Section 8 of the National Voter Registration Act of 1993 ("NVRA" or "Act"), 52 U.S.C. § 20507. Plaintiffs also seek reasonable attorneys' fees, litigation expenses, and costs, which are available to prevailing parties under the Act. *Id.*, § 20510(c).

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, and in particular under 52 U.S.C. §§ 20507 and 20510(b).

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a defendant resides in this district and all defendants reside in Colorado, and because a substantial part of the events and omissions giving rise to the claims herein occurred in this district.

## PARTIES

4.      Plaintiff Judicial Watch, Inc. ("Judicial Watch") is a not-for-profit, educational organization incorporated under the laws of the District of Columbia and headquartered at 425 Third Street SW, Suite 800, Washington, D.C. 20024.

5.      Plaintiff Elizabeth Miller is a member of Judicial Watch and a resident and a registered voter in El Paso County, Colorado, who has voted and intends to vote in the County.

6.      Plaintiff Lorri Hovey is a resident and a registered voter in Adams County, Colorado, who has voted and intends to vote in the County.

7.      Plaintiff Mark Sutfin is a resident and a registered voter in Elbert County, Colorado, who has voted and intends to vote in the County.

8.      Plaintiff American Constitution Party of Colorado is a registered political party in Colorado and a state affiliate of the national Constitution Party, and is devoted to electing candidates in Colorado who espouse its principles.

2

9.    Plaintiff Libertarian Party of Colorado is a registered political party in Colorado and a state affiliate of the national Libertarian Party, and is devoted to electing candidates in Colorado who espouse its principles.

10.    Defendant Jena Griswold is Colorado's Secretary of State and, as such, is Colorado's chief State election official.  52 U.S.C. § 20509; COLO. REV. STAT. § 1-1-107(1)(d), (e).  As chief State election official, Defendant Griswold is responsible for the coordination, implementation, and enforcement of the NVRA in Colorado.  She is sued in her official capacity.

## STATUTORY BACKGROUND

11.    The NVRA requires states to "conduct a general program that makes a reasonable effort to remove … from the official lists of eligible voters" the names of voters who have become ineligible by reason of death or a change of residence.  52 U.S.C. § 20507(a)(4).

12.    With respect to voters who have changed residence, the NVRA provides that they must be removed from a jurisdiction's voter rolls, but only if such registrants either (1) confirm in writing that they have moved outside the jurisdiction, or (2) fail to respond to an address confirmation notice and then fail to vote during a statutory waiting period extending from the date of the notice through the next two general federal elections.  52 U.S.C. §§ 20507(d)(1), (d)(3); 52 U.S.C. § 21083(a)(4)(A).

13.    Federal regulations and Colorado law refer to voter registrations as "inactive" when a registrant has failed to respond to a notice and will be subject to removal if the registrant then fails to vote in the next two general federal elections.  11 C.F.R. § 9428.7; COLO. REV. STAT. § 1-2-605.

14. Under both the NVRA and Colorado law, voters whose registrations are inactive may still vote on election day. 52 U.S.C. § 20507(d)(2)(A); COLO. REV. STAT. § 1-2-605(3). Accordingly, inactive voters are still registered voters.

15. In June of each odd-numbered year, the U.S. Election Assistance Commission ("EAC") is required by law to report to Congress its findings relating to state voter registration practices. 52 U.S.C. § 20508(a)(3). Federal regulations require states to provide various kinds of data to the EAC for use in this biennial report, including the numbers of active and inactive registered voters in the last two federal elections, and the numbers of registrations removed from the rolls for any reason between those elections. 11 C.F.R. § 9428.7(b)(1), (2), (5).

16. The NVRA affords a private right of action to any "person who is aggrieved by a violation of" the Act. 52 U.S.C. § 20510(b). Ordinarily, a private litigant is required to send notice of a violation to the chief State election official prior to commencing a lawsuit. *Id.*, § 20510(b)(1), (2). However, no such notice is required "[i]f the violation occurred within 30 days before the date of an election for Federal office." *Id.*, § 20510(b)(3).

## FACTS

### I.    Judicial Watch's Background, Mission, and Membership.

17. Judicial Watch's mission is to promote transparency, integrity, and accountability in government and fidelity to the rule of law. The organization, which has been in existence since 1994, fulfills its mission through public records requests and litigation, among other means.

18. Judicial Watch is supported in its mission by hundreds of thousands of individuals across the nation. An individual becomes a member of Judicial Watch by making a financial contribution, in any amount, to the organization. Members' financial contributions are by far the

4

single most important source of income to Judicial Watch and provide the means by which the organization finances its activities in support of its mission.  Judicial Watch in turn represents the interests of its members.

19.     Over the past several years, Judicial Watch's members have become increasingly concerned about the state of the nation's voter registration rolls, including whether state and local officials are complying with the NVRA's voter list maintenance obligations.

20.     Members are concerned that failing to comply with the NVRA's voter list maintenance obligations undermines the integrity of elections by increasing the opportunity for ineligible voters or voters intent on fraud to cast ballots.

21.     In response to this concern, Judicial Watch commenced a nationwide program to monitor state and local election officials' compliance with their NVRA list maintenance obligations.  As part of this program, Judicial Watch utilizes public records laws to request and receive records and data from jurisdictions across the nation about their voter list maintenance efforts.  It then analyzes these records and data and publishes the results of its findings to the jurisdictions, to its members, and to the general public.

II.     **Judicial Watch's Findings Regarding Violations of the List Maintenance Provisions of the NVRA.**

22.     In June 2019, the EAC published its biennial, NVRA-related report, entitled ELECTION ADMINISTRATION AND VOTING SURVEY, 2018 COMPREHENSIVE REPORT, A REPORT TO THE 116TH CONGRESS.

23.     Along with its 2019 report, the EAC published the responses it received to a voter registration survey it sent to the states.   The survey instrument is available at https://www.eac.gov/research-and-data/datasets-codebooks-and-surveys   under   the   category

heading of "2018," at a link entitled "2018 Election Administration and Voting Survey Instrument."  The states, in consultation with their county and local officials, certify their answers to this survey directly to the EAC.  The states' responses are compiled on the same webpage under the heading "EAVS Datasets."  The initial version of these compiled responses was released on June 27, 2019, and has been periodically updated since then.

24.     In August 2021, the EAC published its next biennial, NVRA-related report, entitled ELECTION ADMINISTRATION AND VOTING SURVEY 2020 COMPREHENSIVE REPORT, A REPORT FROM THE U.S. ELECTION ASSISTANCE COMMISSION TO THE 117TH CONGRESS.

25.     Along with its 2021 report, the EAC published the responses it received to the voter registration survey it sent to the states.  The survey instrument is available at https://www.eac.gov/research-and-data/datasets-codebooks-and-surveys under the category heading of "2020," at a link entitled "2020 Election Administration and Voting Survey Instrument."  The states' responses are compiled on the same webpage under the heading "EAVS Datasets."  The initial version of these compiled responses was released on August 16, 2021, and was updated on October 8, 2021.

26.     The State of Colorado posts its registration figures on the Secretary of State's website, at this address:

https://www.sos.state.co.us/pubs/elections/VoterRegNumbers/VoterRegNumbers.html.

This site links to the monthly registration statistics for each Colorado county, separately listing the active and inactive registrations.

27.     The American Community Survey ("ACS") is an enormous survey run by the Census Bureau.  It is sent every month to about 3.5 million addresses.  The five-year ACS survey

consists of a rolling average of 60 months and is considered to be the most authoritative population estimate outside of the national, decennial census.  Among other things, the ACS provides an estimate of the citizen population over the age of 18 for each U.S. county.

28.     Judicial Watch's analysis of the foregoing records and data from the EAC, the State of Colorado, and the Census Bureau shows that Colorado has failed to make a reasonable effort to remove ineligible registrants from the rolls.

**A.      The Excessive Registration Rates in Numerous Colorado Counties.**

29.      A jurisdiction's "registration rate" is (1) the number of its voter registrations, divided by (2) the number of citizens over the age of 18 who live there.

30.     When a registration rate exceeds 100%—so that there are more registrations than citizens old enough to register—it is an indication that a jurisdiction is not taking steps required by law to cancel the registrations of ineligible registrants.

31.     In the summer of 2019, Judicial Watch compared the Colorado county registration numbers published by the EAC in June 2019 with the then-most-recent five-year ACS estimates of citizen voting-age population (for the period from 2013 to 2017).  Forty of Colorado's 64 counties—or 62% of the total number—had registration rates exceeding 100%.

32.     Judicial Watch used the same methodology and the same data sources to determine the registration rates of other counties and states.  The percentage of Colorado counties with registration rates exceeding 100% was *the highest in the nation*.

33.     In September 2020, Judicial Watch compared the most recent five-year ACS data released by the Census Bureau (for the period from 2014 through 2018) with the contemporaneous

60 months of registration data for those same years, which data was reported online by Colorado's Secretary of State.

34.     The September 2020 study showed that, in an average month of that 60-month period, 20 Colorado counties had registration rates exceeding 100%.

35.     The September 2020 study showed that as many as 39 Colorado counties had registration rates exceeding 100% during a single month of that period.

36.     The September 2020 study showed that nine Colorado counties—Cheyenne, Dolores, Jackson, Mineral, Ouray, Phillips, Pitkin, San Juan, and Summit—had registration rates exceeding 100% during *every single month* of that 60-month period.  A tenth county, Moffat, had registration rates exceeding 100% during every month except one during that period.

37.     The September 2020 study showed that six other Colorado counties—Baca, Boulder, Clear Creek, Douglas, Hinsdale, and San Miguel—had registration rates exceeding 100% during a majority of the months in that 60-month period.

38.     In October 2022, Judicial Watch repeated the September 2020 study, but with the most recent data.  Specifically, Judicial Watch compared the most recent five-year ACS data released by the Census Bureau (this time for the period from 2016 through 2020) with the contemporaneous 60 months of registration data for those same years, which data was reported online by Colorado's Secretary of State.

39.     The October 2022 study showed that, in an average month of that 60-month period, 18 Colorado counties had registration rates exceeding 100%.

40.     The October 2022 study showed that as many as 42 Colorado counties had registration rates exceeding 100% during a single month of that period.

8

41.     The October 2022 study showed that ten Colorado counties—Baca, Cheyenne, Dolores, Hinsdale, Jackson, Mineral, Ouray, Phillips, San Juan, and Sedgwick—had registration rates exceeding 100% during *every single month* of that 60-month period.

42.     The October 2022 study showed that seven other Colorado counties—Pitkin, Summit, Moffat, Clear Creek, Gilpin, San Miguel, and Elbert—had registration rates exceeding 100% during a majority of the months in that 60-month period.

43.     The summer 2019 study, the September 2020 study, and the October 2022 study all consistently show that Colorado counties have chronically high registration rates, which is evidence of an ongoing, systemic problem with its voter list maintenance efforts.

**B.      Low Numbers of Removals for Failing to Respond to An Address Confirmation Notice and Failing to Vote or Otherwise Appear.**

44.     If a jurisdiction removes relatively few registration records belonging to electors who fail to respond to an address confirmation notice and fail to vote in two consecutive federal elections, that jurisdiction is not complying with Section 8(d) of the NVRA.

45.     Question A9e of the EAC's survey for the period 2018-2020 asked jurisdictions to report the number of registrations removed during the most recent two-year reporting period where the "[r]eason for [r]emoval" was "[f]ailure to respond to notice sent and failure to vote in two most recent federal elections."  This question plainly refers to removals under Section 8(d)(1)(b)(ii) of the NVRA.

46.     In response to question A9e of the EAC's survey for the period from 2018-2020, 23 Colorado counties reported removing less than 4% of their registration list during that period pursuant to the Section 8(d) procedures.  Because the reporting period was two years, that means that these counties removed on average less than 2% of their registration list per year.  The 23

Client Work\4895-2392-6076.v1-10/28/22

counties are: Baca, Bent, Broomfield, Chaffee, Cheyenne, Costilla, Crowley, Custer, Delta, Dolores, Elbert, Garfield, Gilpin, Grand, Jackson, Kiowa, Lake, Mineral, Montrose, Morgan, Otero, Phillips, and Washington.

47.    The most recent census data shows that 18% of Colorado's residents were not living in the same house as a year ago.

48.    The most recent census data shows that, for the 23 counties listed in paragraph 45, the percentage of those changing residence *each year* is as follows: Baca (11.6%), Bent (10.2%), Broomfield (19.2%), Chaffee (11.7%), Cheyenne (8.2%), Costilla (13.0%), Crowley (9.3%), Custer (10.4%), Delta (12.1%), Dolores (5.3%), Elbert (13.0%), Garfield (15.0%), Gilpin (18.4%), Grand (15.2%), Jackson (17.5%), Kiowa (21.6%), Lake (11.9%), Mineral (19.7%), Montrose (11.4%), Morgan (15.3%), Otero (14.3%), Phillips (10.5%), and Washington (21.3%).

49.    A removal rate below 2% per year under Section 8(d) is too low to comply with the NVRA's reasonable efforts requirement.

50.    The low numbers of removals per year under Section 8(d) are consistent with evidence of Colorado's high registration rates, and indicate an ongoing, systemic problem with its voter list maintenance efforts.

**C.    Low Numbers of Address Confirmation Notices Sent to Colorado Registrants.**

51.    One of the core responsibilities under the NVRA is sending address confirmation notices pursuant to Section 8(d) to registrants who are believed to have moved.  If a jurisdiction sends relatively few such notices, it cannot be compliant with the NVRA.

52.    Question A8a of the EAC's 2019 survey asked jurisdictions to report the number of address confirmation notices sent during a two-year reporting period.

Client Work\4895-2392-6076.v1-10/28/22

53.     In response to question A8a of the EAC's 2016-2018 survey, 25 Colorado counties reported sending address confirmation notices to less than 2% of their registrants during that period.  Because the reporting period was two years, that means that these counties sent address confirmation notices on average to less than 1% of their registrants each year.  These 25 counties are: Archuleta, Conejos, Costilla, Custer, Delta, Eagle, Gilpin, Grand, Gunnison, Hinsdale, Huerfano, Jackson, La Plata, Las Animas, Lincoln, Mineral, Moffat, Ouray, Phillips, Prowers, Rio Blanco, Rio Grande, Saguache, San Juan, and San Miguel.

54.     Sending address confirmation notices to less than 1% of a registration list each year does not comply with the requirements of the NVRA.

55.     The low numbers of address confirmation notices sent during the 2016-2018 reporting period are consistent with evidence of Colorado's high registration rates and low Section 8(d) removals, and indicate an ongoing, systemic problem with Colorado's voter list maintenance efforts.

**D.      High Inactive Registration Rates.**

56.     Removing registrations that have been inactive for two general federal elections is a necessary part of any effort to comply with the NVRA's mandate to conduct a general program that makes a reasonable effort to remove the registrations of ineligible registrants.

57.     Having a high percentage of inactive registrations is an indication that a state or jurisdiction is not removing inactive registrations after two general federal elections as the NVRA requires.

58.     A jurisdiction's "inactive registration rate" is obtained by dividing (1) the number of inactive registrations, by (2) the total number of registrations for that jurisdiction.

Client Work\4895-2392-6076.v1-10/28/22

59.     In September 2020, Judicial Watch undertook an analysis of Colorado's inactive registration rates, month by month, for the previous two years (*i.e.*, from October 2018 through September 2020).  This analysis relied on the data reported on the Colorado's Secretary of State website.

60.     The EAC's data for the reporting period from 2016-2018 showed that the median inactive registration rate for all U.S. counties for which data was available was 8.3%.

61.     Judicial Watch's September 2020 analysis showed that 60 of Colorado's 64 counties had an average monthly inactive registration rate over the past two years that was greater than 8.3%.

62.     Judicial Watch's September 2020 analysis showed that eight of Colorado's counties had an average monthly inactive registration rate over the past two years that was greater than 17%—meaning that one out of every six registrations was inactive.  These eight counties are: Bent, Jackson, La Plata, Lake, Las Animas, Phillips, San Juan, and Summit.

63.     In October 2022, Judicial Watch undertook the same analysis of Colorado's inactive registration rates, month by month, for the 25-month period following the last study (specifically, from October 2020 through and including October 2022).  This updated analysis also relied on the data reported on the Colorado's Secretary of State website.

64.     The EAC's data for the reporting period from 2018-2020 showed that the median inactive registration rate during that period for all U.S. counties for which data was available was 7.12%.

Client Work\4895-2392-6076.v1-10/28/22

65.     Judicial Watch's October 2022 analysis showed that 55 of Colorado's 64 counties had an average monthly inactive registration rate over the past 25 months that was greater than 7.12%.

66.     Judicial Watch's October 2022 analysis showed that 29 of Colorado's 64 counties had a monthly inactive registration rate that exceeded the national median inactive registration rate of 7.12% during *every single month* for the past 25 months.

67.     Judicial Watch's October 2022 analysis showed that 61 of Colorado's 64 counties had a monthly inactive registration rate that exceeded the national median inactive registration rate of 7.12% during more than half of the past 25 months.

68.     Colorado's counties have high inactive registration rates.

69.     These high inactive registration rates are consistent with evidence of Colorado's high general registration rates, low Section 8(d) removals, and low numbers of address confirmations sent, and indicate an ongoing, systemic problem with Colorado's voter list maintenance efforts.

### III.     Plaintiffs' Injuries.

70.     Judicial Watch's concerns with Colorado's list maintenance practices led it to send a letter in April 2019 to seven Colorado counties and to the Secretary of State requesting documents relating to the state's list maintenance practices, and to analyze the state's documentary responses to that request.

71.     Judicial Watch's concerns also caused it to send a notice letter threatening a Section 8 lawsuit to the Secretary of State as chief State election official, and to Jefferson County, in December 2019, and to research and analyze the Secretary's response.

Client Work\4895-2392-6076.v1-10/28/22

72.     Judicial Watch's concerns also led it to conduct analyses of Colorado's registration rates, removal rates, address confirmation notice statistics, and inactive rates previously set forth in this complaint.

73.     Judicial Watch has expended substantial resources, including staff time, investigating Defendants' failure to comply with their NVRA voter list maintenance obligations, communicating with Colorado officials and concerned members about Defendants' failure, and researching statements made by Defendants in their correspondence.

74.     The resources expended by Judicial Watch to investigate, address, research, and counteract Defendants' failure to comply with their NVRA voter list maintenance obligations are distinct from and above and beyond Judicial Watch's regular, programmatic efforts to monitor state and local election officials' NVRA compliance.

75.     Were it not for Defendants' failure to comply with their NVRA voter list maintenance obligations, Judicial Watch would have expended these same resources on its regular, programmatic activities or would not have expended them at all.  Instead, it diverted its resources to counteract Defendants' noncompliance and to protect members' rights.

76.     Plaintiffs Miller, Hovey, and Sutfin, and all individual members of Judicial Watch who are lawfully registered to vote in Colorado, have rights under both the U.S. Constitution and the Colorado Constitution to vote in federal and state elections, as well as statutory rights under both federal and state law to the safeguards and protections set forth in the NVRA.

77.     Defendants' failure to comply with their NVRA voter list maintenance obligations burdens the federal and state constitutional rights to vote of Plaintiffs Miller, Hovey, and Sutfin, and of all individual members of Judicial Watch who are lawfully registered to vote in Colorado,

14

by undermining their confidence in the integrity of the electoral process, discouraging their participation in the democratic process, and instilling in them the fear that their legitimate votes will be nullified or diluted.

78.     Defendants' failure to satisfy their NVRA voter list maintenance obligations also infringes the federal and state statutory rights of Plaintiffs Miller, Hovey, and Sutfin, and of all individual members of Judicial Watch who are lawfully registered to vote in Colorado.  These individuals have a statutory right to vote in elections for federal office that comply with the procedures and protections required by the NVRA, including the voter list maintenance obligations set forth in Section 8.

79.     Protecting the voting rights of Judicial Watch members who are lawfully registered to vote in Colorado is germane to Judicial Watch's mission.  It also is well within the scope of the reasons why members of Judicial Watch join the organization and support its mission.

80.     In September 2020, 454 Judicial Watch members who are registered to vote throughout Colorado confirmed to Judicial Watch's staff that they were concerned about Defendants' failure to satisfy their voter list maintenance obligations under the NVRA and the resulting harm to these members' voting rights.

81.     Because the relief sought herein will inure to the benefit of Judicial Watch members who are lawfully registered to vote in Colorado, neither the claims asserted nor the relief requested requires the participation of Judicial Watch's individual members.

82.     Plaintiffs American Constitution Party Colorado (ACP-CO) and Libertarian Party of Colorado (LP-CO) are political parties in the State of Colorado.

Client Work\4895-2392-6076.v1-10/28/22

83.     ACP-CO and LP-CO both runs their own candidates for Colorado offices and seek to support candidates from other parties who support their core principles.

84.     ACP-CO and LP-CO rely on Colorado's voter rolls to identify in-state voters who are members of their respective political parties, so that they may contact them and encourage them to assist the parties by volunteering, organizing, contributing, and voting.

85.     ACP-CO and LP-CO rely on Colorado's voter rolls to identify in-state voters who are registered as independents because they may, after an appropriate contact is made, join or support their respective political party, and may assist the party by volunteering, organizing, contributing, and voting.

86.     Defendant's failure to timely remove ineligible registrants from Colorado's voter rolls causes both ACP-CO and LP-CO to waste significant time, effort, and money trying to contact voters listed on the rolls who have changed residence or have died.

## COUNT I

### (Violation of Section 8(a)(4) of the NVRA, 52 U.S.C. § 20507(a)(4))

87.     Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

88.     Plaintiffs Judicial Watch, Miller, Hovey, and Sutfin, all individual members of Judicial Watch who are lawfully registered to vote in Colorado, and ACP-CO and LP-CO are persons aggrieved by a violation of the NVRA, as set forth in 52 U.S.C. § 20510(b).

89.     Because the violations set forth herein occurred within 30 days before the date of a federal election, no notice is required prior to filing this action.  52 U.S.C. § 20510(b)(3).

16

90.     Defendant has failed to fulfill her obligations under Section 8(a)(4) of the NVRA to conduct a general program that makes a reasonable effort to cancel the registrations of registrants who are ineligible to vote in Colorado's federal elections.

91.     Defendant Griswold has failed in her responsibilities as Colorado's chief State election official to coordinate, implement, and enforce the NVRA in Colorado.

92.     Plaintiffs have suffered and will continue to suffer irreparable injury as a direct result of Defendants' failure to fulfill their obligations to comply with Section 8(a)(4) of the NVRA.

93.     Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for entry of a judgment:

a.     Declaring Defendants to be in violation of Section 8(a)(4) of the NVRA;

b.     Permanently enjoining Defendants from violating Section 8(a)(4) of the NVRA;

c.     Ordering Defendants to develop and implement a general program that makes a reasonable effort to remove the registrations of ineligible registrants from the voter rolls in Colorado;

d.     Ordering Defendants to pay Plaintiffs' reasonable attorney's fees, including litigation expenses and costs; and

e.     Awarding Plaintiffs such other and further relief as this Court deems just and proper.

Dated October 28, 2022

*s/ John Zakhem*
_____

17

John Zakhem
Jackson Kelly PLLC
1099 18th Street, Suite 2150
Denver, Colorado 80202
Office: (303) 390-0351
JSZakhem@JacksonKelly.com

Robert D. Popper*
Eric Lee*
Judicial Watch, Inc.
425 Third Street SW, Suite 800
Washington, D.C. 20024
(202) 646-5172
Rpopper@judicialwatch.org
Elee@judicialwatch.org

T. Russell Nobile*
Judicial Watch, Inc.
Post Office Box 6592
Gulfport, Mississippi 39506
(202) 527-9866
Rnobile@judicialwatch.org

H. Christopher Coates*
Law Office of H. Christopher Coates
934 Compass Point
Charleston, South Carolina 29412
(843) 609-7080
curriecoates@gmail.com


*Application for admission forthcoming*